Jackson, Orr & Co. *v.* Shelton.

JACKSON, ORR & CO. *v.* SHELTON.

(*Jackson.*    April Term, 1890.)

1. HOMESTEAD.    *In lands held jointly by husband and wife.*

Homestead exists in lands held jointly by husband and wife as tenants by entireties; and the wife, who has obtained divorce and decree for the homestead, may assert that right against the husband's creditors in such lands or their proceeds.

Code construed: §§ 2935, 2936, 2937, 2946 (M. & V.); § 2113*a et seq.* (T. & S.).

Cases cited and approved: Arnold *v.* Jones, 9 Lea, 548; Hall *v.* Fulghum, 86 Tenn., 451; White *v.* Fulghum, 87 Tenn., 281; Dickinson *v.* Mayer, 11 Heis., 520; Ren *v.* Driskell, 11 Lea, 649; Ames *v.* Norman, 4 Sneed, 682.

Cited and distinguished: McRoberts *v.* Copeland, 85 Tenn., 211; Avans *v.* Everett, 3 Lea, 76.

Cited and overruled: Cullom *v.* Cooper (oral opinion at Nashville, December Term, 1888).

2. SAME.    *Statutes exempting liberally construed.*

Doctrine re-affirmed that statutes exempting homestead are liberally construed in favor of claimant of that right.

Cases cited and approved: White *v.* Fulghum, 87 Tenn., 284; Dickinson *v.* Mayer, 11 Heis, 520; Ren *v.* Driskell, 11 Lea, 649.

3. SAME.    *Effect of joint mortgage of husband and wife.*

Doctrine re-affirmed that the joint mortgage of husband and wife, made to secure one debt of the husband, does not defeat the right to homestead as against his other debts; and that homestead should be

Jackson, Orr & Co. *v.* Shelton.

assigned out of the surplus proceeds where the lands are sold under such mortgage.

Cases cited and approved: Hall *v.* Fulghum, 86 Tenn., 451; White *v.* Fulghum, 87 Tenn., 281.

---

FROM BENTON.

---

Appeal from Chancery Court of Benton County. A. J. ABERNATHY, Ch.

LUCIEN HAWKINS for Complainants.

J. E. JONES for Mrs. Shelton.

CALDWELL, J. G. W. Shelton and his wife, Roena Shelton, were joint owners as tenants by entireties of a residence in Camden. It was worth less than $1,000; and he owned no other real estate.

In 1883 they conveyed it, by deed of trust, to secure the payment of certain debts to one H. F. Stegall. In 1888, when but a small part of the secured indebtedness remained unpaid, other creditors of G. W. Shelton filed this bill to foreclose the deed of trust and reach the surplus proceeds of the trust property for their own debts. G. W. Shelton made no defense, but his wife answered the bill, claiming homestead in the house and lot, subject to the deed of trust, the proper and binding execution of which she admitted.

Before the filing of this bill, Mrs. Shelton

brought her suit, in the Circuit Court, against her husband for divorce; and an absolute divorce was granted to her, pending the present bill, in the Chancery Court.

The Circuit Court, in its judgment granting the dissolution of the bonds of matrimony, also adjudged that, as between her and him, she was entitled to homestead in said house and lot—such adjudication being subject to the single reservation that it should not operate to the prejudice of the rights of complainants in the present bill.

Hearing the cause on pleadings and proof, the Chancellor adjudged that complainants were entitled to the relief sought in their bill, and that Mrs. Shelton had no right of homestead in the property involved. From that part of the decree refusing her claim to homestead she has appealed to this Court.

The conveyance of the residence by husband and wife, to secure payment of particular debts, is not a waiver of the right of homestead therein as against other debts. *Hall* v. *Fulghum*, 2 Pickle, 451. If the secured debts be not paid, and the deed of trust or mortgage be foreclosed, the surplus proceeds of the property is subject to the homestead right, and will be held as an exempt fund, to the extent of $1,000, for re-investment in other real estate. *White* v. *Fulghum*, 3 Pickle, 281.

So that, in the case before us, there is nothing to defeat the claim of Mrs. Shelton in the fact that she and her husband conveyed this property in trust to secure Stegall's debts and that fore-

closure has been decreed. As against complainants her right is the same as it would be without such conveyance and decree. If in that case she would be entitled to homestead in the property, she is now entitled to the same right in such of its proceeds as may remain after payment of the secured indebtedness.

The homestead is in the head of the family, and, in case of marriage, in the husband *primarily;* but when the wife obtains a divorce from her husband, on account of his fault or misconduct, "the title to the homestead shall be vested by decree of the Court granting the divorce, in the wife, and after her death it shall pass to the children." Code (M. & V.), § 2946.

This provision of the statute was met by the judgment of the Circuit Court when granting Mrs. Shelton a divorce, and the homestead was thereby effectually vested in her, if in law the property was subject to the right of homestead at all. The reservation in that judgment did not diminish her legal rights thereunder, for complainants in this cause had taken no steps, nor indeed could they have taken any, which could operate to the prejudice of any *existing* right of homestead.

It follows, therefore, that Mrs. Shelton is now entitled to the right of homestead in said house and lot, or its proceeds when sold, subject alone to the prior claim of Stegall, if said property was held by such a title as to be subject to the claim of homestead by G. W. Shelton before the ex-

Jackson, Orr & Co. *v.* Shelton.

ecution of the deed of trust. In short, the question is whether or not the right of homestead exists or inheres in real estate owned by husband and wife jointly as tenants by entireties. The learned Chancellor was of opinion that it did not, and so adjudged.

By the statute, "A homestead, or real estate in the possession of or belonging to each head of a family, and the improvements, if any, thereon, to the value of, in all, one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family—and which shall inure to the benefit of his widow and children, and shall be exempt from sale in any way at the instance of any creditor or creditors." Code (M. & V.), § 2935.

"Each head of a family owning real estate shall have the right to elect where the homestead or said exemption shall be set apart, whether living on the same or not." Code, § 2936. These provisions "apply as well to equitable as legal estates," and also "to leasehold property." Code, §§ 2937, 2938. And homestead exists in favor of one owning only a life estate in the land. *Arnold* v. *Jones,* 9 Lea, 548.

The homestead exemption is a favorite in this country, and laws concerning it are construed liberally in favor of the claimant. Thompson on H. & E., Secs. 4, 7, and 731; 9 Am. & Eng. Ency. of Law, 519; *White* v. *Fulghum,* 3 Pickle, 284; 11 Heis., 520; 9 Lea, 548; 11 Lea, 649.

Jackson, Orr & Co. *v.* Shelton.

The language of our statute is most comprehensive. In the description of the property in which the right exists, its terms are broad and unrestricted: "A homestead, or *real estate* in the possession of or belonging to each head of a family, * * * shall be exempt," etc.; and "each head of a family owning *real estate* shall have the right to elect," etc. Interpreting these words according to their ordinary significance, as must be done in the absence of any qualification or limitation upon them, there can be but little trouble in ascertaining the legislative intent. Undeniably the designation, "real estate," in its ordinary sense includes the interest of a husband in a house and lot owned by himself and his wife jointly as tenants by entireties. If such an interest is not, in fact and in law, *real estate,* what can it be? Certainly it is not personalty. So naturally does it fall within the meaning of the words "real estate," as employed in the statute, that they must inevitably be held to embrace it, there being nothing in other parts of the act, or in its history, indicating, even remotely, that the law-makers used those words unadvisedly or intended to omit or exclude such an interest from the protection of the statute.

Moreover, the *object* of the statute, as well as its language, demands this construction. It was conceived that an exemption law protecting $1,000 worth of *real estate* to heads of families owning the same, would be wise legislation and promotive

of the public welfare. To be so, it must be impartial, and apply alike to each head of a family owning "a homestead, or real estate," whether in fee, for life, leasehold interest, legal or equitable estate. The nature of the estate, or extent of the title of the beneficiary, was not of the essence of the scheme. The purpose was to stay the hand of the creditor as against a limited amount, in value, of real estate, of *whatever character*, belonging to any citizen who should be the head of a family. It was known, unquestionably, that different persons, entitled to the same protection, owned different interests and different estates in land, and terms broad enough to include them all were employed.

Why not include the head of a family who owns land as tenant by entirety with his wife in the scope of a law whose purpose is so humane and commendable? To the extent of his interest he can use the land for the shelter, support, and benefit of his family in the same manner as could another man owning the absolute fee. He stands in the same or greater need of the law's favor. Is he any the less deserving of protection because he does not own the whole estate? Or is the officer of the law to take what he has because he has not more? Manifestly not. The protection of such an interest is clearly within the spirit and the letter of the statute. We can conceive no satisfactory reason why the Legislature should not have intended to embrace in this wholesome pro-

vision *all present interests in land* naturally embraced in the language used in the Act.

Again, under the authority of *Ames* v. *Norman*, 4 Sneed, 682, the estate of G. W. Shelton in the house and lot in question here, might, before the deed of trust, have been seized and sold at law, and the purchaser at such a sale would have become vested with the "right to occupy and enjoy the rents and profits of the land during the joint lives" of Shelton and wife, and, in case Shelton survived her, with the fee.

Now, can it be that an interest in land which is so subject to seizure and sale, and the sale of which will vest in the purchaser the right to the full enjoyment of the whole property during the life of the debtor at least, is not real estate within the contemplation of the homestead law? We think not. If the creditor in right of the husband may take the whole property, at all events, during the life of the latter, so the husband, in his own right, may invoke the protection of the law for the whole property during the same period. The husband's estate under the deed, augmented by his marital interest in his wife's estate, becomes practically tantamount to the whole estate during their joint lives. It is so held in favor of his creditors seeking a sale, or in favor of purchasers at judicial sale; for like reason it must be so held in his favor when he asserts his claim for homestead.

That property held by husband and wife by entireties could not "inure to the benefit of his

widow and children" upon his death, but would vest in her absolutely by right of survivorship, is not a sufficient reason for denying his right of homestead therein while they both live. If so, then the right of homestead could never exist in favor of a life tenant, for his estate ceases with his death, and nothing can "inure to the benefit of his widow and children" as homestead. But the right of homestead does exist in a life estate (9 Lea, 548), and in "leasehold property" (Code, § 2938), though the period of the lease may terminate in the life-time or at the death of the lessee.

The meaning of the statute is that, in *lands descending* from the husband and father, the homestead "shall inure to the benefit of the widow and children."

We cannot believe, in the absence of an express declaration to that effect, in the face of the law itself, that the framers of our Constitution, and the members of the General Assembly, intended to extend the benefits of the homestead exemption to citizens owning real estate in severalty, and not to those owning it jointly with their wives as tenants by the entirety.

A law making such a distinction would, in our judgment, be both impolitic and unjust. It would be an unjustifiable discrimination in favor of some persons and against others alike deserving of the law's favor and protection. Such is not our law, which, as we understand it, is distinctly *impartial*, extending the right of the exemption to "each

head of a family owning real estate," whether in fee, for life, for years, in severalty, in joint tenancy, etc.

The case of *McRoberts* v. *Copeland*, 1 Pickle, 211, is not in point. There a husband and father conveyed a tract of land to his daughters, reserving a life estate to himself and his wife. The Court held that after his death his wife took the life estate by survivorship in her own right, and that it should not be "reckoned as a part of his land in the assignment of homestead and dower" to her as his widow, because "all his title and interest in that particular tract of land ceased absolutely with his death." *Ib.*, 212, 213.

The husband's right of homestead exemption in the reserved life estate was in no sense involved, and could not have been under the facts of that case, it arising after all his interest had passed away. Had he made the claim of such right in his life-time, it should have prevailed; but how that would have been the Court was not called upon to express an opinion, and could not properly have done so.

As to the case of *Avans* v. *Everett*, 3 Lea, 76, wherein it was decided that the right of homestead did not exist in land held by tenants in common, we content ourselves with the observation that its reasoning (which we do not feel called upon to approve) has no application to this case, because here the debtor's interest is practically equivalent to an estate for life, at the least, in

Jackson, Orr & Co. v. Shelton.

severalty, and is not an undivided interest merely, as in that case; that if sound upon its own facts, which we do not decide, the doctrine of that case should not be extended.

In *Mary C. Cullom v. John A. Cooper et als.*, decided at the December Term, 1888, the question was exactly the same as that involved in the present case, and the decision was against the claim of homestead. With the greatest care we have reconsidered the question, and now decide it otherwise, holding that the right of the homestead exemption does attach to real estate owned by husband and wife jointly as tenants by entireties.

For reasons already stated, it is clear that G. W. Shelton was entitled to homestead in the house and lot, subject alone to the deed of trust. The judgment of the Circuit Court granting Mrs. Shelton a divorce, vested her with the same right. She is now entitled to an exemption in the surplus proceeds of the property, the same to be reinvested according to law. 3 Pickle, 290.

Reverse the decree as to homestead, and enter decree in accordance with this opinion. Complainants will pay costs of appeal.

---

#### DISSENTING OPINION.

SNODGRASS, J. We do not concur in the holding that the homestead exemption applies to the interest of a husband in land held in joint tenancy

with the wife. He is not the owner of the property, or sole possessor as contemplated by our law.

Under the Constitution, "a homestead in the possession of each head of a family, and the improvements thereon, to the value, in all, of one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family, to inure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same." Constitution of 1870, Art. XI., Sec. 11.

The statute of 1870 on this subject is in exactly the same terms, exempting "a homestead in the possession of each head of a family." It also provided that such homestead should inure to the benefit of the widow, and be exempt during the minority of the children occupying it, and until the youngest child reached the age of twenty-one years.

The sixth section of the Act provided that "the homestead in the possession of a husband shall, upon his death, go to his widow during her natural life, with the products thereof to her own use and benefit and that of her family who reside with her, and upon her death it shall go to the minor children *of her deceased husband,* free from the debts of the father, mother, or said children; and upon the death of said minor child or children, or their arrival of age, the same may be sold and the proceeds distributed amongst all the heirs at

law of the deceased head of a family according to the laws of descent and distribution in this State."

The seventh and eighth sections are as follows:

" Sec. 7. Upon the death of said head of a family without widow or minor children, said land shall be sold for the payment of the debts as may be legally established against *his* estate, and the remainder distributed among his heirs according to the rules of descent in force at the time in this State.

" Sec. 8. If the head. of a family is married, and his wife obtain a divorce on account of his fault or misconduct, the title to the homestead shall be vested by the decree of the Court granting the divorce in the wife, and after her death it shall pass to *their* children."

These sections quoted show conclusively that the homestead contemplated was to exist on land owned by the head of a family; that it was such as might inure to the benefit of his widow (because she was such) after his death, and which would descend to *his* children, or, when sold, the proceeds might be distributed " among all the heirs at law of the deceased head of a family," " amongst his heirs."

It was an estate too which, after the death of wife or children, might be sold " to pay debts legally established against his estate," and was such a one that, if the wife obtained a divorce on account of his fault or misconduct, was to be vested by decree of Court in the wife for life, and after her death in " their children."

These provisions show, first, that the land subject to homestead must belong to the husband in severalty, and especially that they do not apply to lands held by husband and wife in joint tenancy. Such land goes to the survivor on the death of either. *Taul* v. *Campbell*, 7 Yer., 319; *Berrigan* v. *Fleming*, 2 Lea, 271; *Shields* v. *Netherland*, 5 Lea, 201; *McRoberts* v. *Copeland*, 1 Pickle, 211.

It is manifest, then, that a homestead on it would not inure to the benefit of his widow as such, and for her use and benefit and that of her family residing with her, and upon her death to the minor children *of her deceased husband*, because on his death the entire fee would vest in her, and "her family residing with her" could take no interest in it whatever, nor upon her death would it go to the minor children *of her deceased husband*. It would go to her devisee, or, in default of a will, to her children or heirs, and not to his, unless, of course, they were the same.

And, for the same reason, it could not be sold and proceeds distributed amongst his heirs in the contingencies provided for as quoted. Nor, upon divorce granted for his misconduct, could it be vested in the wife for life with remainder to *their children*, because that would be to limit her own fee for life, and deprive her of the power to devise her estate after discoverture. If upon dissolution of the marital relation the property would vest in her, it would be absolutely. These considerations, it seems to us, show conclusively that

the homestead law is not applicable to such a tenancy; but there are others. If a legal homestead does exist on such an estate, what is the effect of it? Suppose a divorce granted to the husband. He would still remain the head of the family, and the homestead right would exist in him. Then, it must continue to the destruction of the wife's interest in the fee for life; so that in that event a homestead would be carved out exclusively for him in land which did not belong to him, but which in fact belonged also to another. So, too, the husband can abandon a legal homestead, and the fee in it may be sold in that event for his debts, and it will vest in the purchaser free from the homestead right; but it cannot be said that such sale would affect the wife's right in a joint tenancy, even if she joined in the abandonment because her interest in the fee, her right of survivorship, would not be affected by either abandonment or sale.

The Act of 1879, amending the homestead law of 1870, does not affect the question by adding to the words "a homestead," the words "or real estate belonging to each head of a family," because these words made no other change in the law than to give the husband, or head of the family, the right to elect where he would locate the homestead. *Flatt* v. *Stalder & Co.*, 16 Lea, 379. Now, suppose the husband elects to locate it on the joint tenancy of himself and wife, and dies leaving other lands. The wife, according to the case be-

Jackson, Orr & Co. *v.* Shelton.

ing considered, would take the selected homestead as such (although it was her own), and would thereby be cut out of any homestead in the husband's land. This would inevitably result if such an interest was a proper homestead, but we have held it was not, and defeated this very result in her favor. *McRoberts* v. *Copeland,* 1 Pickle, 211.

There are many considerations of like character which go to prove that such a joint estate in land was not within the contemplation of the law-makers in establishing "a homestead in possession of the head of a family;" and there is still a part of the statute unquoted which we think clearly shows that such an estate, nor any other estate held in common with others, was within such contemplation, and that only such as was exclusively within the ownership and possession of the head of a family was contemplated—such as he held in severalty, and could be set apart to him by metes and bounds, and that without resorting to a Court to partition and carve out for him such estate.

The third and fourth sections of the Act provide for levy upon the real estate of the debtor upon which the homestead is situated by execution and attachment, and directs that the levying officer shall summon three disinterested freeholders and have them set apart the homestead of the debtor out of the real estate levied upon. They are to fix the precise boundaries, and the remainder of the lands are to be sold. If it is of greater value than $1,000, and is so situated that it cannot be

7—5 p

divided so as to set apart the homestead, the free-holders shall certify the fact, and the officer shall sell the whole and pay proceeds to the Clerk of the Court rendering judgment or condemning the land for sale; and he shall, under order of the Court, invest $1,000 in the purchase of a homestead for the family of the debtor, and the creditor take the surplus.

Now, it is clear that this cannot apply to an interest held jointly with the wife any more than with any one else, because, if it does so apply, it forces the sale of her land, and makes her take in lieu of all of it and all interest in it, her family share in the part allotted as homestead, or in that purchased for the benefit of the family. This, upon the theory that such is the effect that results under the law, and must result if this land is within its meaning. That these consequences could follow no one can maintain, and thus it appears that such an estate was never within the intent of the Act.

There are more reasons why such an estate could not be burdened with a homestead, by proper construction of our Act, than there are why a tenancy in common could not. The tenancy in common, while, like this, a legal estate, has no termination in survivorship, but will descend to heirs, and may inure to the benefit of a widow, not because of her own, but because of her husband's interest; and yet the reason of a want of an interest and possession in severalty, which pre-

vents a tenancy in common being so burdened, exists here, and equally precludes the possibility of the existence of a homestead upon a joint tenancy, and to this extent authority against homestead on a·tenancy in common is authority against a homestead here. It was ten years ago decided that no such right existed in favor of a tenant in common. *Avans* v. *Everett,* 3 Lea, 76. And this has ever since been followed. But the direct question came before us at Knoxville, September Term, 1886, and it was then held such an interest as the wife's on survivorship could not be taken into consideration in fixing homestead, but the wife owned such land, and homestead must be assigned out of other lands of the husband. *Roberts* v. *Copeland,* 1 Pickle, 211, opinion by Judge Caldwell. It came again before this Court at Nashville, last term, and we there held that the homestead law did not apply to a joint tenancy of husband and wife.

These cases settled the law in accord with the case referred to, and many others unreported. They are sound in reason, and should be adhered to as the only proper construction of the statute. It does not matter that one was an oral opinion. It was in accord with the written one cited, and, besides, this Court, of course, adheres to principles settled, however it may be done, and does not have one law to administer orally and another in writing. The one delivered in this case was oral, but since adjournment at Jackson a written opinion has been prepared.

In this opinion not only is the case in 1 Pickle referred to impliedly overruled, but the case of *Avans* v. *Everett*, 3 Lea, 76, would share the same fate if the reasoning of Judge Caldwell in this case should be adhered to when that question arises, for it is based upon authority hostile to it, and which was referred to and rejected by Judge Cooper, who delivered the opinion of the Court in the 3 Lea case. We regard the overruling of the 1 Pickle case, and the oral opinion at Nashville, as not only erroneous, but unwise in policy. We therefore respectfully, but earnestly, dissent from the present ruling.

Lurton, J., concurs in this dissent.