Trust Co. v. Bank.

NASHVILLE TRUST COMPANY *v.* FIRST NATIONAL BANK
*et al.*

(*Nashville.* December Term, 1910.)

1. **LIFE INSURANCE.** Subject to disposition, by assignment or will of insured, when payable to his executors, administrators, or assigns; but not, when payable to his widow and heirs, or to his legal heirs.

Life insurance effected by a husband and father upon his own life, by a policy payable to his executors, administrators, or assigns, is subject to his disposition by will or assignment, and the insured is not deprived of this power by the statute (Shannon's Code, section 4030) providing that such insurance shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors; but where the policy is payable to the widow and heirs, or to his legal heirs, they take a vested interest, and the husband cannot defeat their interest by assignment or will. (*Post, pp.* 620-624.)

Code cited and construed: Sec. 4030 (S.); sec. 3135 (M. & V.); sec. 2294 (T. & S. and 1858).

Acts cited and construed: Acts 1845-46, ch. 216, sec. 3.

Cases cited and approved: Rison v. Wilkerson, 3 Sneed, 566; Williams v. Carson, 9 Bax., 516; Gosling v. Caldwell, 1 Lea, 455; Catholic Knights v. Kuhn, 91 Tenn.; 214.

2. **SAME.** Policy payable to insured's legal representatives, and not disposed of by him, goes to his widow and next of kin regardless of solvency or insolvency of his estate.

Where a life policy is made payable to the legal representatives of the insured, and he dies without making any disposition of the policy, the claims of his widow and next of kin, whether the latter are children or other kin falling within the terms of the statute, will, under said statute (Shannon's Code, sec-

tion 4030), prevail over his general creditors, whether his estate is solvent or insolvent, and though the policy was issued before his marriage. .(*Post, p.* 624.)

Code cited and construed: Sec. 4030 (S.); sec. 3135 (M. & V.); sec. 2294 (T. & S. and 1858).

Acts cited and construed: Acts 1845-46, ch. 216, sec. 3.

Cases cited and approved: Collier v. Latimer, 8 Bax., 420; State, for use, v. Anderson, 16 Lea, 338; Jackson v. Shelton, 89 Tenn., 82; Harvey v. Harrison, 89 Tenn., 476; Rose v. Wortham, 95 Tenn., 507.

3. **SAME.  Policy payable to insured's executors, administrators, or assigns, and assigned by him leaves a mere equity in him, and his widow and children can have no higher rights.**
Where a life policy, procured by a husband and father upon his own life, is made payable to his executors, administrators, or assigns, and he makes an assignment thereof, absolute in form, but in fact made to secure the payment of a particular debt, the legal title to the policy is vested in the assignee, and the insured's interest in it thereafter is an equity, pure and simple; and where, after the payment of the particular debt, he permits the policy to remain in the hands of the assignee as a general collateral under the original assignment to secure any amount he might from time to time owe the assignee, the widow and children of the insured are clothed only with the equity, and are not entitled to recover the proceeds of the policy from the assignee, without paying the debts due from the insured to the assignee. (*Post, pp.* 625, 626.)

4. **PLEDGES.  Distinctive characteristics; possession and special property in pledgee; foreclosure or private sale.**
The distinctive characteristic of a pledge or deposit of collateral security for a debt is that it must be delivered to the pledgee, actually or constructively, under an agreement that it shall be held by the pledgee as security for some debt or engagement of the pledgeor; but the pledgee acquires only a special property, with the right to possession until the object of the pledge is

Trust Co. v. Bank.

accomplished, and though. if the pledgeor makes default the pledgee may foreclose in chancery or may sell on reasonable notice, without judicial process, but the absolute title of the pledgeor is not divested until such foreclosure or sale. *(Post, p.* 626.)

Case cited and approved:   Johnson v. Smith, 11 Humph., 397.

5. **LIFE INSURANCE.   Insured assigning policy to secure debts to assignee is estopped to recover it, without the payment of all debts contracted.**

Where the insured assigned and absolutely transferred a life policy, payable to his executors, administrators, and assigns, for the purpose of securing a particular debt, and subsequently permitted the policy to remain in the hands of the assignee, and repeatedly agreed that it should stand as security for any amount for which he might become, from time to time, indebted to the assignee, the insured will be estopped from securing possession of the policy without the payment of the indebtedness incurred on the faith and credit of the policy as security.   *(Post, pp.* 626, 627.)

6. **SAME.   Oral assignment of a life policy is valid.**

The assignment of a life insurance policy is not required to be in writing to be valid, and an oral assignment is valid under our law; for it is governed by the rule applicable to ordinary simple contracts.   *(Post, pp.* 627, 628.)

Case cited and approved:   Box v. Lanier, 112 Tenn., 403.

7. **WITNESS.   In suit of a guardian and administrator against a corporation to recover the proceeds of life policy on decedent's life, the president of the corporation, if not a party to the suit, is a competent witness.**

Where guardian of the children of a decedent, and his widow as administratrix of his estate and individually sues a corporation for the proceeds of a life insurance policy on the life of the decedent, the president of the corporation is competent to testify as to transactions with the intestate, because he is not a party to the suit. *(Post, pp.* 622, 628.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

LYTTON TAYLOR, for complainants.

WALTER S. STOKES, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This case is here on appeal from a decree rendered by the chancery court of Davidson county. Appellants here were, respectively, complainant and cross complainant below. The bill was filed March 12, 1909.

There is no material controversy about the facts. There are two assignments of error, by each of which appellants insist that the court below did not correctly apply the law to the facts. It appears that Len K. Hart died intestate in Davidson county, on February 14, 1909, leaving surviving him his widow, Mrs. Lucy E. Hart, and two minor children. The Nashville Trust Company, appellant, is the guardian of these children, and the widow is the administratrix of the estate of said decedent.

The original bill was filed by said guardian, and the widow as such administratrix, and as widow of said decedent, was joined with appellee bank as a defendant to the bill.

She answered the bill in both capacities, and her individual answer was made her cross bill. The original bill sought a decree against the appellee, the First National Bank, for the sum of $4,000, alleged to be two-thirds of the proceeds of a policy of insurance on the life of said decedent, which had been collected by said appellee.

The cross bill of the widow sought a decree against said defendant for the remaining one-third of said policy of insurance, or the sum of $2,000.

The appellee bank, defendant below, admitted the collection by it of said $6,000 life insurance policy, but set up by way of defense that the policy was by its terms payable to the executors, administrators, or assigns of the decedent, and that he had, while in life, made an assignment of said policy to defendant bank, absolute in terms, but, in fact, to secure the payment of a particular debt; and that after the payment of said particular debt, for the space of some seven years or more, and down to the date of his death, said decedent had permitted said policy to remain in the hands of appellee bank as a general collateral, under said original assignment, to secure all amounts said decedent might owe it from time to time, howsoever such indebtedness might arise between them, whether by note, draft, or otherwise; and that therefore said widow and two children of decedent were entitled to recover from it only such of the proceeds of said policy as might remain after the indebtedness held by it, and chargeable against said proceeds, had been deducted by it from the gross amount of $6,000.

Upon the issues thus made, proof was taken, and final decree was rendered on June 14, 1910, wholly in accord with the contention of appellee bank. It was decreed to be entitled to hold the amount of its indebtedness covering the full sum of the policy, less the sum of $1,765.37, which, it was decreed, should be paid by it, as follows: One-third to Mrs. Lucy E. Hart, widow, and two-thirds to the Nashville Trust Company, guardian of said minors.

From this decree, the Nashville Trust Company, guardian, and the widow, in her individual right and as administratrix, duly appealed.

The assignments of error are as follows:

First. That the chancellor erred in decreeing that appellee was entitled to have its debt paid out of the proceeds of the policy,

Second. That the chancellor erred in holding that the evidence of Watts, the president of appellee bank, was competent.

We remark in passing that neither of these assignments of error raises any question as to the correctness of the decree in the determination of the amount of the debt of the appellee bank, which was, as it claimed, chargeable against the policy, so that we must assume, from the failure to assign error on this point, that in this respect there was no error in the decree, and that the pith and substance of the assignments of error is that, in whatever amount the decedent may have been indebted to the appellee, no part of the sum was properly chargeable against the policy, and that the chancellor

received incompetent evidence in arriving at the contrary conclusion.

Relative to the first assignment of error, it will be noted that by our Acts 1845-46, c. 216, section 3, carried as section 4030 of Shannon's Code, it is provided that a life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property free from the claims of his creditors. But it is a mistake to suppose that by reason of this statute the husband is without power to control the matter of who shall benefit by an insurance on his life, where the policy is payable to his executors, administrators, or assigns. The precise question came before this court in the case of *Rison* v. *Wilkerson & Co.,* 3 Sneed, 566, where the insurance policy was not by its terms made payable to the widow and children and was by the husband during his lifetime assigned to a creditor as collateral security for a debt, and it was decided that the creditor was entitled to hold the proceeds to the extent of the debt, and, further, to the extent of the amount of advances made by the creditor after the assignment for the payment of premiums on the policy.

The principle was also applied where the disposition of the policy by the husband in his lifetime was by will, where the policy was payable to his executors, administrators, or assigns, and it was held that the claim of the legatee, under the will, was superior to that of his widow and children, who relied on the statute. *Williams* v. *Carson et al.,* 9 Baxt., 516.

The principle was again applied in *Catholic Knights*
v. *Kuhn,* 91 Tenn., 214, 18 S. W., 385, and other cases not
necessary to mention. In fact this doctrine may be said
to be settled beyond dispute or cavil by our authorities,
and to be based on the idea that when the policy is pay-
able to the executors, administrators, or assigns of the
husband, it is his property and subject to his disposition.
Where, however, the policy is, by its terms, made payable
on the death of the husband to the widow and heirs, or to
his legal heirs, it is equally well settled that they take a
vested interest, and the power of the husband to defeat
their interest by subsequent assignment is lost. See *Gos-
ling* v. *Caldwell,* 1 Lea, 455, 27 Am. Rep., 774, and au-
thorities there cited.

It is also well settled that if the policy, by its terms, be
payable to the legal representatives of the assured hus-
band, and he die without having made any disposition of
it, that by the operation of the statute the claims of his
widow and next of kin, whether the latter be children or
other kin falling within the terms of the statute, will pre-
vail over the claims of his general creditors in a contest
over the proceeds of the policy, whether the estate of the
insured be solvent or insolvent, and although in the par-
ticular case the policy may have been issued before the
assured was married. See *Rose* v. *Worthham,* 95 Tenn.,
507, 32 S. W., 458, 30 L. R. A., 609, citing *Harvey, Adm'r.*
v. *Harrison,* 89 Tenn., 476, 14 S. W., 1083; *Collier* v.
*Latimer,* 8 Baxt., 420, 35 Am. Rep., 711; *Jackson, Orr
Co.* v. *Shelton,* 89 Tenn., 82, 16 S. W., 142, 12 L. R. A.,
514; *State, use, etc.,* v. *Anderson,* 16 Lea, 338.

It is an uncontroverted fact of this record that the policy in the case at bar was by its terms payable to the executors, administrators, or assigns of said decedent. This being true, his power to assign it, so as to defeat the claims of his wife and children under the statute, was absolute. It is an equally uncontroverted fact that this power was exercised by him. He made an assignment of the policy to appellee bank, absolute on its face, by which the full legal title to the policy passed to appellee bank. This assignment was made on September 22, 1896, and acknowledged by the assignor before a notary public on the 23d of September, 1896.

The original bill avers that this assignment was made, and that it was absolute in form, and there is an undisputed copy of it in the record, which confirms the averment of the bill.

The answers of the widow in her individual right, and as administratrix, respectively, admit that the above averment of the bill is true.

It is not claimed by appellants' pleadings, nor is it shown by any proof, that the appellee bank, by any act or deed, ever parted with the legal title to the policy so vested in it, until after the death of the insured, when, under claim of right, the policy was surrendered by it to the company which issued it, upon payment to the appellee of the sum of $6000. Nor is it claimed by the pleadings of appellants, or shown by any proof, that the decedent ever claimed that the appellee had been divested of the legal title to said policy and the right to collect

15 Cates—40

the same upon his death; from the date of the absolute
assignment to the date of decedent's death, the legal title
and right to collect the policy was in the appellee.
*Strictissimi juris,* the policy was not pledged or
deposited as collateral; it was, on the contrary, ab-
solutely assigned. The distinctive characteristics of a
pledge or deposit of collateral are that the property
must be capable of delivery to the pledgee, and must be
delivered to him actually or constructively, and under a
contract, the essence of which is that the thing delivered
is to be held by the pledgee as a security for some debt
or engagement of the pledgeor. The pledgee does not ac-
quire absolute title by such a contract, but only a special
property in the thing pledged, with the right to posses-
sion until the object of the pledge be accomplished. If
the pledgeor make default, the pledgee may a bill in
equity and foreclose, or he may sell without judicial
process on reasonable notice to the pledgeor to redeem
the pledge. The absolute title to the thing pledged is not
divested out of the pledgeor until foreclosure or a sale on
proper notice by the pledgee. This is the law of pledge
or deposit of property, as collateral security for a debt.
See *Johnson* v. *Smith,* 11 Humph., 397, citing Story on
Bailments.

The theory of appellants was that the policy was
pledged. The fact was that it was absolutely assigned,
leaving no vestige of legal right to it or the proceeds of it
in the decedent. So it was, from the date of the assign-
ment, during his life and at his death. The interest he
had in it from the time of the assignment, during his life

and at his death, was an equity, pure and simple, and
not a legal right. With this equitable interest as his
basis of credit, he contracted the debts shown by the
record. If he, during life, had sought to recover the
policy, and to cancel his absolute assignment of it with-
out paying these debts, he would have been repelled by a
court of equity on the ground that he who would have
equity must do equity. His wife and children can have
no higher rights than he. The legal right to the policy
was not in them, for we have seen that, notwithstanding
the statute, written as the policy was, decedent had the
right to make absolute assignment of it, and exercised it
in such a way as to cut off all their legal rights. They
are clothed only with his equity, and as he would have
been bound, so they are bound, to do equity.

Aside from the effect of the absolute transfer of the
policy, which was in writing, it is well settled that the
act of the decedent in permitting the policy which had
been so assigned to remain in the hands of appellee, and
oft-repeated agreements by him that it should stand as
security for any amount in which he might be from time
to time indebted to appellee, would have amounted to an
estoppel against him, had he, during his life, attempted
to secure possession of the policy without payment to ap-
pellee of the indebtedness incurred on the faith and
credit of the policy as a security.

The assignment of a policy need not be in writing to
be valid, but is governed by the rule applicable to ordi-
nary simple contracts. Joyce on Insurance, vol. 3, sec-
tion 2326; May on Insurance, section 395; Bacon on

Benefit Societies and Life Ins., section 297; Phillips on Insurance, section 880.

"An oral assignment of a life insurance policy is valid under our law." *Box* v. *Lanier,* 112 Tenn., 403, 79 S. W., 1042, 64 L. R. A., 458.

There is no merit in the second assignment of error. The witness Mr. F. O. Watts, who was president of the appellee bank, was not a party to this suit, and was a competent witness. *Southern Life Ins. Co.* v. *Booker,* 9 Heisk., 608, 24 Am. Rep., 344; *Grange Warehouse Association* v. *Owen,* 86 Tenn., 355, 7 S. W., 457.

It follows that the decree of the chancery court must be affirmed.