## HARMON *et al.* v. SMITH *et al.*

*(Circuit Court, D. Minnesota. May 9, 1889.)*

1. WILLS—CHARGE ON LAND TO PAY DEBTS.

     A mere general direction in a will to pay debts is not a charge upon the real estate for that purpose, and furnishes no evidence of an intent to charge it.

2. SAME—POWER OF SALE—TERMINATION OF.

     Testator gave and bequeathed all the residue of his estate to his executor and trustee, "with full power to sell and convey any or all of said estate, and convert the same into money," in trust for the use and benefit of H., who was made sole legatee, the proceeds to be paid over to her. *Held,* that the power of sale ceased on the death of H.

3. SAME—INVALID SALE—NOTICE TO PURCHASER.

     A purchaser from the trustee is bound to ascertain whether the power of sale exists at the time of his purchase.

4. INFANCY—RATIFICATION OF INVALID SALE.

     The act of the minor heirs of H. in receipting to the trustee for the proceeds derived from an exercise of the power of sale after the death of H. did not

constitute a ratification where they were not first fully informed of the circumstances and invalidity of that sale, but supposed their signatures were wanted to enable him to get a final settlement, and be released from the management of the estate.

5. SAME—ESTOPPEL BY ACTS OF GUARDIAN.

Whatever the father of the minor heirs, claiming to act as their guardian, may have done in recognition of the trustee's power after the death of H., cannot estop them to assert the invalidity of the trustee's sale.

6. SAME—ESTOPPEL BY CONDUCT.

The doctrine of estoppel by conduct does not apply to infants, unless such conduct was intentional and fraudulent.

In Equity. Bill to remove cloud on title.

On May 16, 1863, George K. Swift, a citizen of the state of Ohio, made his last will and testament, as follows:

"Know all men by these presents that I, George K. Swift, of Warren, in the county of Trumbull and state of Ohio, in view of the uncertainty of our abiding time, do make this my last will and testament:

"*Item* 1. I direct that all my just debts and funeral charges be paid.

"*Item* 2. I hereby request my executor hereinafter named to provide at his discretion suitable monuments for my deceased parents and their deceased children, including what he may deem proper for myself.

"*Item* 3. In remembrance of the kindness and attention of my sister J. Rebecca Harmon in time of sickness and trial, and knowing that my sister Maria P. Kirtland is amply provided with all the necessaries of this life, I make the following provision for the rest and residue of my estate: I give and bequeath to my executor and trustee hereinafter named all of my estate, both real and personal, with full power to sell and convey any or all of said estate, and convert the same into money, to fulfill all contracts by me made, release mortgages, compromise and adjust claims that may be due to me, at his discretion, make proper deeds of conveyance for land, and give any acquittance that may be necessary in the settlement of my estate; said executor and trustee to have and to hold all of my estate, both real and personal, in trust for the use and benefit of my sister J. Rebecca Harmon, who I hereby make the sole legatee of my estate. As soon as may be proper in the estimation of my said executor and trustee, I hereby direct him to pay over the avails of my estate, as it may come into his hands from time to time, or he may in final settlement convey to my said legatee all or any part of my real estate unsold, and a receipt from my said legatee for any balance after final settlement shall be a full and sufficient discharge to my said executor and trustee for the same. I do hereby constitute and appoint my uncle, Frederick Kinsman, my executor and trustee, to do and perform all as provided in this my last will and testament. In witness whereof I have hereunto set my hand and seal this 16th day of May, A. D. 1863. GEORGE K. SWIFT. [Seal.]

"Signed, sealed, and published in presence of us, James Dana and Frederick Kinsman, Jr., who signed our names hereunto in presence of each other.

"JAMES DANA.

"FREDERICK KINSMAN, JR. [U. S. Rev. Stamp.]"

The testator died June 30, 1865, and the will was admitted to probate by the proper court, and Frederick Kinsman, the executor and trustee therein named, duly qualified and accepted the trust.

The testator owned real estate in St. Paul, Minn.; and prior to December 15, 1865, Kinsman having fully complied with the laws of the state of Minnesota, (chapter 16, Laws 1865,) was authorized to execute the

will in Minnesota. On February 13, 1868, J. Rebecca Harmon, the sole legatee of Swift's estate, died intestate, leaving surviving her Julian Harmon, her husband, and three minor children,—Cornelia, born November 10, 1861; Julian D., born July 23, 1863; and Olive R., born March 16, 1865. At the time of her death Kinsman had paid for the monuments, and had on hand a large sum of money belonging to the Swift estate over and above debts. Ten years after the death of Mrs. Harmon, claiming authority under the Swift will, and without an order of court, he sold and conveyed on June 18, 1878, certain city lots in St. Paul, Ramsey county, Minn., including lot 24, block No. 8, Nininger's addition, to the defendant Robert Smith, and executed the deed as executor and trustee of the estate of C. K. Swift. Smith sold to defendant Twohy, and the latter to defendant Dow. The defendant Armstrong is alleged to be interested in the land with Smith. Kinsman died October 16, 1886, and the complainants bring this suit to set aside the deed from Kinsman to Smith, as a cloud upon their title; and those claiming under Smith are made parties defendants, and other relief is prayed. The land in controversy is vacant and unoccupied.

*Frank Ford* and *John W. Pinch*, for complainants.

*John D. O'Brien*, *Homer C. Eller*, and *I. V. D. Heard*, for defendants.

NELSON, J., (*after stating the facts as above.*) The defendants claim that upon a proper construction of the will the power of sale was not limited to the life-time of Mrs. Harmon, but could be exercised by Kinsman at any time prior to a final distribution of the property to Mrs. Harmon during her life, or afterwards to those succeeding to her rights. It is also claimed that the real estate as well as the personalty was charged with the payment of debts, and when the lots were sold Smith was not bound to inquire whether there were debts which justified a sale of real estate, or see to the disposition of the proceeds. It is also urged that the complainants, and each of them, are estopped from bringing this suit for the reason that the sale has been ratified by the acceptance of part of the purchase money. The facts are substantially undisputed, and the cause has been elaborately and ably argued by counsel.

1. The sale cannot be upheld on the theory that the debts were a charge upon the real estate. The debts are not directed to be paid out of any particular fund. The personalty, as appears from the testimony, was ample to discharge all debts and pay for monuments, and it was so applied. The testator manifestly intended that the executor should pay the debts from the personal estate, in the exercise of his duty, as the law required. There was no trust created by the will, or expressed therein, by virtue of which the executor and trustee could accomplish this object. A mere general direction to pay debts is not a charge upon the lands for that purpose, and furnishes no evidence of an intention to charge the real estate. The latest authority found (*Balls* v. *Dampman*, 16 Atl. Rep. 16, Md. Ct. App. Nov. 22, 1888, following *White* v. *Kauffman*, 66 Md. 92, 5 Atl. Rep. 865) so decides, and holds that such declaration "simply provides what the law has determined shall be done,

with or without such a clause in the will." See *Lupton* v. *Lupton*; 2 Johns. Ch. 614; *In re City of Rochester*, 110 N. Y. 159, 17 N. E. Rep. 740; Will. Eq. Jur. 488.

2. The only trust in the will is to sell and pay over the proceeds for the use and benefit of Mrs. Harmon, the sole legatee, and this is an express trust, recognized by the law of Minnesota, Gen. St. Minn. § 11, p. 553, in force when the will became operative. After directing the payment of debts, and requesting his executor to provide suitable monuments, the testator "gives and bequeaths" all the residue of his real and personal estate to his executor and trustee, "with full power to sell and convey any or all of said estate, and convert the same into money," in trust for the use and benefit of his sister, Mrs. Harmon, who is made sole legatee, and directs him to pay over the avails to her. By these provisions it is clear that the testator intended that his whole real and personal estate should become united in one common fund for the sole purpose of distribution to the sole object of his bounty, Mrs. Harmon. The testator intended to and did exhaust the entire produce of the sale of his realty and personalty and give it to her. The whole property was disposed of by the will, and he died intestate as to no portion of his estate. There was a complete appropriation of his entire estate for the benefit of his sister, after the debts were paid and the monuments provided; and he gives a reason for it in his will. The testator created no other trust, and did not look beyond his sister for an object of his bounty. It is true, he conferred upon his executor and trustee authority to fulfill his contracts, release mortgages, compromise and adjust claims that may be due, give deeds of conveyance for lands, and give any acquittances necessary in the settlement of his estate; but all these duties and powers not embraced in the trust, to sell for the benefit of Mrs. Harmon, the law conferred upon Kinsman as executor, some of them to be done by order of court, obtained upon application, and others without it. I concede that for purposes of the trust the real estate may be considered as personalty impressed by the doctrine of equitable conversion, but such conversion is admitted only for the accomplishment of equitable results. Kinsman only took the legal title subject to the trust, and on the death of Mrs. Harmon the estate, real and personal, vested in her representatives. The trust ceased to be active, and was then determined, and the estate belonged to the complainants; for the doctrine is well settled that the trustee only takes that quantity of interest which the purposes of the trust require and the will permits, and its duration continues to that extent only. 4 Kent. Comm. 310, and note; 1 Perry, Trusts, § 312. The legal estate remained in the executor and trustee so long as the execution of the trust required it and no longer. *Nicoll* v. *Walworth*, 4 Denio, 388; *Young* v. *Bradley*, 101 U. S. 787. The heirs of Swift would take under no circumstances, for the proceeds of the entire estate were disposed of by the will. No ulterior purpose for maintaining the trust is evinced, requiring that the intent, of the testator, to change the realty into personalty should be carried out. No sale was authorized except to convert the estate into money for the use and

benefit of Mrs. Harmon.    Kinsman was not the trustee of the representatives of Mrs. Harmon and when he undertook to sell after her death the sale was utterly void.

3. It is claimed that the sale to Smith was ratified by the representatives of Mrs. Harmon, and that by their conduct they are estopped to assert any right to the land.    The doctrine of estoppel by conduct does not apply to minors, unless such conduct was intentional and fraudulent. Bisp. Eq. §§ 282, 293; Big. Estop. (1st Ed.) 486.    The acts of Kinsman in dealing with the property after the death of Mrs. Harmon, known to Mr. Harmon, the guardian, and the receipt of money derived from the sale by two of the heirs after they became of age, are relied upon, but they do not work an estoppel.    Kinsman made the sale without informing the complainants except the father, Mr. Harmon, who refused to sign a deed as guardian or relinquish his curtesy.    The paper purporting to be a release of lots in Ramsey county, Minn., signed by Harmon, guardian, and Cornelia and Olive Harmon, and the vouchers for money, are not sufficient evidence of the children's intention to ratify the sale. They at least must have been informed of every material fact, and been advised that the sale was void without confirmation by them, before a ratification can be established, if at all.    Story, Ag. §§ 239, 243, and note; Kerr, Fraud & M. 296; 2 Pom. Eq. Jur. §§ 964, 965; *Owings* v. *Hull,* 9 Pet. 607–628.    This was not done.    Kinsman at no time informed the children of the sale, and it was only after his death they discovered it.    He undertook to dispose of the property, claiming the right so to do as executor and trustee under the will of Swift.    When the vouchers were signed by Cornelia and Olive he stated that he wished to get rid of the management of the Swift estate, and procured their signatures to enable a final settlement to be obtained, and nothing was said about a desire to have the sale ratified.    Smith knew that the sale was made by Kinsman, acting as executor and trustee, in the exercise of authority claimed under the will of Swift.    It is so recited in the deed.    He was put upon inquiry to ascertain whether the power existed to sell, and he must ascertain at his peril whether Kinsman had the estate which he professed to convey.    1 Perry, Trusts, § 226; 2 Perry, Trusts, § 814. Whatever Mr. Harmon may have done claiming to act as guardian, cannot bind the children, and estop them from asserting a right to real estate illegally sold.    The conveyance to Smith being void, the defendants Twohy and Dow, claiming title through him, have no standing in court, and the complainants are entitled to a decree, and it is so ordered.