HARVEY, Adm'r, *v.* HARRISON.

(*Nashville.*  January 6, 1891.)

1. LIFE INSURANCE.  *Upon husband's life for wife's benefit exempt from his debts.*

Although the widow alone is named as beneficiary in a policy of insurance taken by the husband upon his own life, yet the insurance is exempt to her from all claims of his creditors by virtue of the statutes declaring exemption of insurance upon husband's life in favor of his "widow and children," or of his "widow and next of kin."

Code construed: §§ 3135, 3335, 3336 (M. & V.); §§ 2294, 2478, 2479, (T. & S.).

2. SAME.  *Same.  Exemption valid without regard to amount.*

And the exemption created by these statutes is valid without regard to the amount of the insurance.  The statutes have placed no limit upon the amount, and the Courts can fix none.

3. SAME.  *Same.  Exemption valid notwithstanding assured's insolvency.*

And the exemption is valid against creditors existing at inception of the insurance, although the assured was then and continued to be insolvent, devoting his entire estate in payment of premiums.  The exemption is unconditional, and its express object was to withdraw a fund from creditors for the benefit of the debtor's family.

Case cited and approved: Rison *v.* Wilkerson, 3 Sneed, 568.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

VERTREES & VERTREES and A. A. SWOPE for Harvey.

DEMOSS & MALONE for Harrison.

DICKINSON, Sp. J. In 1875 George W. Harrison became bound to Matthew Cowan on a replevy bond. From 1882 to 1886, being insolvent, he insured his life in various sums aggregating $58,000, paying therefor in premiums a sum of money larger than the debt claimed in this suit. In 1886 he died. His wife, the defendant, who was named as the beneficiary, realized $57,000 on the policies. In 1888 the personal representative of the estate of Cowan obtained a judgment for $4,000 against the estate of Harrison on said bond, and there was a return of *nulla bona*. This bill is brought to subject the insurance money to. the satisfaction of this judgment, on the theory that Harrison, by devoting his entire estate in payment of the premiums purchasing this insurance, fraudulently disposed of his property, and that, to the extent of the premiums so paid, the fund arising from them should be subjected to the claim of complainant.

Defendant relies for protection on §§ 3135, 3335, and 3336 of the Code, as follows:

"§ 3135. A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors."

"§ 3335. Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the law of distribution, without being in any manner subject to the debts of the husband, whether by attachment, execution, or otherwise."

"§ 3336. Whenever a married woman causes a life insurance to be effected upon her husband's life it shall in no case be subject to execution or attachment for the debts of the husband, but shall inure to the benefit of the widow and children."

For complainant it is contended that these sections provide that the life insurance contemplated by them shall go to the widow and children, or widow and next of kin, and that the exemption covers only such insurance as is so distributable, and that consequently they cannot be held to apply to these policies, which, by their express terms made the wife the sole beneficiary.

In construing the statute the amount of insurance effected can have no weight. The Legislatures of other States have limited the amount of insurance so protected, but there is no such restriction in Tennessee. The statute must be read the same whether the policy be great or small. The rule that would defeat the exemption in this case would likewise defeat it if the amount were but $1,000 instead of $57,000. The fact of in-

solvency cannot be looked to; for the exemption is unconditional, and its express object was to withdraw a fund from creditors. If the policies had been payable to Harrison's estate, without any stipulation as to the wife, the creditors could have set up no claim to it. *Rison* v. *Wilkerson & Co.,* 3 Sneed, 568.

· If it had been to the wife and children, the basis on which complainant predicates his argument would not exist.

The wrong charged did not, then, consist so much in withdrawing the fund from creditors as in the manner of its bestowal. The creditor could be hurt no more by the wife being sole beneficiary than by the children sharing with her, as undoubtedly might have been accomplished in either of the two ways named.

If the insurance had been made payable to Harrison's estate, and had so continued, the creditor could not have touched it before or after death; but if such policies (being a fund intangible by creditors) had been assigned by Harrison to his wife, then, *ipso facto*, under the argument advanced, the wrong is consummate, and the creditor's right attaches. In this way he would be benefited by the alleged fraud, which in fact consists only in transferring to the wife a fund which he could not have subjected in any way. He could not restrain such transfer by alleging it to be a fraudulent disposition of property, for such right is limited to what he might reach if not trans-

ferred.   He could not be injured by his debtor
alienating' what was already beyond his reach.
Such alienation would neither give the creditor a
right in the fund, nor a right of action against
the transferee.   If this were true, then instead of
a fraudulent disposition of property to defeat cred-
itors, it would be a fraudulent· disposition for the
benefit of creditors.   The proposition, if correct,
is a startling legal paradox.   If the husband, as
shown, can take out the policy in his own name
and safely transfer it to his wife, then how does
it injure the creditor to take it in her name in
the first instance?

Under the construction contended for, a father
could not provide for his dependent minor children
if they were motherless, because there would be no
widow to share in the distribution; and, inasmuch
as the statute (as is claimed) only contemplates in-
surance distributable to widow and children, it could
not be held to apply to a fund where there was
no widow to share in it.

The wife of a husband having no children and
taking out a policy in his own name, would, under
the statute of distributions, be sole beneficiary;
then, why should there be any difference if he, in
the first instance, should make her the beneficiary
in the policy?   It could not injure creditors to
take out the policy in her name instead of his
when the policy, if taken in his name, would,
under the statute, be paid to her.   If this could
be legally done, and afterward children should be

born to them, and he should die leaving a wife
and children, then, because the children could not
share, the statute (as is contended) would not protect
the policy, and what was before perfectly shielded
would, by the mere fact of the birth of children,
become subject to creditors as property fraudulently
disposed of.

Apply this method of literal construction to
§ 3336, which provides:

"§ 3336. Whenever a married woman causes a
life insurance to be effected upon her husband's
life, it shall in no case be subject to execution or
attachment for the debts of the husband, but shall
inure to the benefit of the widow and children."

If the wife effect the insurance with her sepa-
rate estate, shall it inure to the benefit of the
children? If she effect it with money given by
the husband, but in her own name, shall we say
that it shall not inure to the benefit of the
children? The statute says it shall inure to their
benefit, and no limitations are expressed as to
source of premiums or the form of policy. These
questions are suggestive of the difficulties involved
in applying to such statutes a narrow principle of
hermeneutics, which deals merely with the language
and ignores the policy that inspired them. If
she effect it in her own name, shall it for this
reason be subject to the husband's creditors? We
do not think that the words relied 'on as con-
trolling the application of the exemption were used
for any such purpose. They were not intended to

limit the scope of the statute nor to protect the rights of creditors, but simply to provide for the disposition of the fund in the event of its becoming a part of the estate. In the absence of a disposition of it by the husband, this provision was proper to fix the relative rights of the wife and children and take the fund out of the administration immediately for their benefit. The primary purpose of the Act was to exempt life insurance from the claims of creditors, and this is expressed in emphatic and conclusive language. The secondary purpose was to provide for the disposition of this fund. The words inserted for this subordinate intent, dissimilar from the primary object of the Act, will not restrict the scope of the Act in its main intent. The purpose of the enactment is clear, and this must guide in its application. It was to enable a husband or father to provide a fund after his death for his family. Whether the contract be in his own name, or for his wife and children, or in the name of the wife alone, can make no difference to creditors, for the same amount can be withdrawn from them in premiums under either form of contract, and the manner of distribution does not concern them. After the father, the mother is the head of the family. It is often the highest wisdom to intrust her with the means of supporting and educating her children and securing their dependence and obedience. To defeat the possibility of such provision, and force all insurance for the benefit of the family to be

taken out so as to be distributable among the children, and say that the husband cannot insure for the benefit of his wife alone, upon the construction contended for, would be to sacrifice the spirit of a law belonging to that class which, as said by Judge Green in *Bachman* v. *Crawford,* 3 Hum., 216, "ought to be so construed as to advance the remedy the Legislature intended to afford."

The decree is affirmed.

Judge Snodgrass dissents.