EMMA P. FROST *vs.* BENJAMIN S. FROST & another,
trustees & executors.

Suffolk. January 28, 1909. — May 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Assignment,* Validity. *Trust,* Creation. *Insurance,* Life. *Words,* " My will."

An assignment of life insurance policies made to the trustees to be named in the
will of the assignor, for the sole use and benefit of the assignor's wife, who has
assented to this provision for her benefit, is of no effect unless it is executed
and attested as a will, because it cannot take effect until after the death of the
assignor and does not create a present trust.

In an assignment made to " the trustees to be named in my will " the phrase " my
will " must be held to mean the document finally admitted to probate as the
will of the assignor.

The provision of R. L. c. 118, § 73, that " every policy of life insurance made pay-
able to or for the benefit of a married woman, or after its issue assigned, trans-
ferred or in any way made payable to a married woman, or to any person in
trust for her or for her benefit, whether procured by herself, her husband or
by any other person, and whether the assignment or transfer is made by her
husband or by any other person, shall enure to her separate use and benefit,
and to that of her children," has no application to an assignment of a life insur-
ance policy purporting to be made to the trustees to be named in the will of
the assignor, for the sole use and benefit of the wife of the assignor, because
such an attempted assignment is of no effect, so that the policy never has been
legally assigned for the benefit of the wife or in any way legally made payable
to her.

BILL IN EQUITY, filed in the Supreme Judicial Court by the
widow of Albert G. Frost, late of Boston, who died on October
24, 1907, and whose will was admitted to probate, the defend-
ants being named therein as trustees and executors and having
qualified by giving bonds as required by law, praying to have
the defendants declared to be trustees for the plaintiff's sole
benefit under assignments of five life insurance policies alleged
to have been made by her husband on May 17 and August 4,
1898, and that the defendants be ordered to pay to her the
amounts of life insurance received by them as executors and
trustees under the policies in question.

The case was referred to William H. H. Emmons, Esquire, as
master. He filed a report in favor of the plaintiff. The de-
fendants filed ten exceptions to the report, of which only the

second and sixth are now material. Those exceptions were as follows:

2. To the master's ruling that "Upon the foregoing facts I rule as matter of law that the prayer of the bill should be granted and that the plaintiff is entitled to recover of the defendants as trustees $17,327.69 and also such interest thereon as may accrue after it was received by them."

6. To the master's report because he did not rule, as requested, that the assignments of said policies were inoperative and void.

The assignments, which were brief, are described in the opinion.

The case came on to be heard before *Loring*, J., who reserved it upon the pleadings, the master's report and the exceptions thereto for determination by the full court, such decree to be entered as justice and equity might require.

*A. F. Converse*, for the defendants.

*S. H. Tyng*, for the plaintiff.

HAMMOND, J. One of the questions is whether the assignments were valid. The plaintiff does not contend that there was a gift, but insists first that the assignments were operative as a perfected trust, and second, that there was a "statutory investiture" under St. 1894, c. 120, which was in force when the policies were taken out and assigned.

1. Was the trust perfected during the lifetime of the assignor? There were five policies, of which two were each payable to his executors, administrators and assigns, and three were each payable to his legal representatives. Each assignment was of all his right, title and interest "in and to said policy, subject to all its terms and conditions," and each was made to "the trustees to be named in my will," for the sole use and benefit of the plaintiff. The master has found that the plaintiff was informed of these assignments and that she assented thereto; and we think the facts reported by him warrant such findings. But she testified that she never saw any of these policies, nor any of the assignments, until after her husband's death; and the master has further found that "these insurance policies and assignments were matters of common knowledge among the brothers and sisters of the testator; also that they discussed them at

times with the plaintiff; also that they were mistaken in supposing that these assignments gave to the plaintiff only the income of the proceeds of these policies for her life, and that the plaintiff had knowledge that her husband had made provision of some kind for her, by means of these policies and assignments, and that she was willing to accept, and did accept, such provision, whatever it might be, just as her husband made it, but did not see these policies and assignments, and was not informed about the details of the provision made for her therein until after his death."

Who were the assignees? They were to be named in his will. What will? Was it to be the first testamentary document he should thereafter make, whether or not revoked before his death, or was it to be the one which should finally be admitted to probate as his will? The assignor actually made three wills after the assignments were executed and "the trustees named in the different wills were not exactly the same." There can only be one sensible interpretation of the phrase "my will." It must be held to mean the document finally admitted to probate as the will of the assignor. It is certain, therefore, that the trustees could not be finally ascertained until after his death. The assignment could not be delivered to the assignees until after his death. There is nothing to indicate that he intended to make any delivery to any third person to hold for the trustees until they were finally ascertained, nor is it shown upon the facts in the case that he intended to hold the policies himself as trustee. While it is true, as contended by the plaintiff, that the trustees when finally ascertained would derive their appointment under the assignment and not under the will, still it remains equally true that they could not be appointed, nor even ascertained, until after the death of the assignor. It is to be noted that the papers were all retained by the assignor.

Here then is a case where no assignments are delivered to the assignees, nor can they be delivered until after the assignor's death, where also there is no delivery to any one for them and where it does not appear that the assignor intends to hold for them. The language of the assignments seems to point to a testamentary intention, and the whole scheme is manifestly not to take effect as an operative assignment during the lifetime of

the testator.   The assignments were of a testamentary nature, and, not being witnessed as required by the statutes concerning wills, were inoperative after his death.

Nor is the defect cured by the assent of the *cestui que trust* to the assignments.   While such an assent might have a bearing upon the validity of the trust if there was any question as to notice or acceptance, still it has no effect upon the validity of the assignments upon which the trust depends.   The question is not simply whether, assuming the validity of the assignments, the trust was good, but is much deeper, and is whether the assignments upon which alone the trust depends ever became operative in law.   The case is plainly distinguishable from *Kendrick* v. *Ray*, 173 Mass. 305, upon which the plaintiff relies. There the trustee was the beneficiary named in the policy; and the question was as to the terms of the oral trust upon which he received the insurance, and not as to the validity of the appointment of the trustee.   See also *Gould* v. *Emerson*, 99 Mass. 154.

Upon the facts in the case these assignments never took effect within the lifetime of the assignor, for want of assignees, and never took effect after his death for want of proper attestation. There was therefore nothing upon which to base the contemplated trust, and it never was perfected.

2.  What has been said disposes also of the contention that there was a " statutory investiture " in the plaintiff.   St. 1894, c. 120, (now a part of R. L. c. 118, § 73,) upon which this contention is based, runs thus :  " Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit, and to that of her children, subject " to certain provisions not here material.   These policies were not made payable to the plaintiff, nor, for reasons hereinbefore stated, were they ever legally assigned for her benefit or in any way legally made payable to her.   Hence they are not within the statute.

It follows that the second and sixth exceptions of the defendant to the master's report must be sustained. It becomes unnecessary to consider the other exceptions. The order must be

*Bill dismissed.*