[No. 12338.    Department One.    January 6, 1915.]

GERMAN-AMERICAN STATE BANK OF RITZVILLE *et al.*,
*Appellants*, v. MARY B. GODMAN, *Executrix etc.*,
*Respondent.*[1]

WILLS — TESTAMENTARY DISPOSITION — PROPERTY SUBJECT — COMMUNITY PROPERTY.  Community property is subject to testamentary disposition, to the extent of the testator's one-half interest, under Rem. & Bal. Code, §§ 1319 and 1342.

SAME—PROPERTY SUBJECT—PROCEEDS OF LIFE INSURANCE.  Where policies of life insurance are payable to the insured's "executors, administrators, or assigns," or to "the estate of the insured" or to his "legal representatives," the proceeds are subject to testamentary disposition; the words legal representatives meaning ordinarily executors or administrators, and not differentiated from "the estate" in this connection.

EXEMPTIONS—PROPERTY SUBJECT—AVAILS OF LIFE INSURANCE.  Under Rem. & Bal. Code, § 569, providing that the proceeds or avails of all life  .  .  .  insurance shall be exempt from all liability for any debt, the avails of life insurance policies payable to the insured's executors, administrators, or assigns, or to his estate or legal representatives are exempt from all the debts of the deceased, and of the estate or beneficiary at the time the proceeds become available.

EXECUTORS AND ADMINISTRATORS—EXPENSES—PAYMENT OF DEBTS —EXEMPT PROPERTY—LIFE INSURANCE.  Rem. & Bal. Code, §§ 1464 to 1467, providing for the payment of the expenses of administration, and of the funeral and last sickness out of the property of the estate regardless of certain exemptions, has no application to the proceeds or avails of life insurance made payable to the deceased's estate, executors or administrators; in view of the later act, § 569, exempting the proceeds of life insurance policies from all liability for any debt.

[1]Reported in 145 Pac. 221.

SAME—EXEMPT PROPERTY—SETTING ASIDE—WIDOW'S ALLOWANCE—
LIFE INSURANCE. Rem. & Bal. Code, § 1466 et seq., providing for cer-
tain exemptions to be set aside for the benefit of the widow and
minor children, has no application to the proceeds or avails of life
insurance which, by Id., § 569, is exempted from all debts; hence it
is not necessary to order life insurance set aside to the widow as ex-
empt.

WILLS—CONSTRUCTION—DIRECTION TO PAY DEBTS—APPROPRIATION
—EXEMPT PROPERTY—INTENT. A general direction in a will to pay
"all my lawful debts and the expenses of my funeral," is not an
appropriation of the proceeds and avails of the decedent's life in-
surance policies which were payable to his executors, administrators,
or assigns, or to his estate or legal representatives, in view of Rem.
& Bal. Code, § 569, exempting such proceeds from all liability for
any debts; since an intent to appropriate exempt property to the
payment of debts must appear by clear and apt language, and the
quoted words are but a common formula of wills respecting the pay-
ment of debts with funds legally applicable thereto.

WILLS—CONSTRUCTION—PAROL EVIDENCE. A will that is clear,
definite and free from ambiguity cannot be either limited or ex-
tended by resort to parol testimony.

Appeal from a judgment of the superior court for Frank-
lin county, Holcomb, J., entered April 8, 1914, applying the
proceeds of life insurance policies to the use of a legatee, in
a controversy with the administrator and creditors. Affirmed.

*William O'Connor*, for appellants.

*Benton Embree*, for respondent.

Gose, J.—This litigation arose out of a controversy over
the application of the proceeds and avails of certain policies
of insurance upon the life of Henry E. Christensen, deceased.
The policies in controversy amount in the aggregate to
$17,000. The administrator with the will annexed collected
upon the policies $15,739.28. The court held that $14,537.83
of this amount was exempt from the debts of the insured,
expenses of administration, and funeral expenses and ex-
penses of the last sickness. The administrator and the Ger-
man-American Bank of Ritzville, a corporation, intervener,
and the guardian *ad litem* have appealed. The death of
Judge Godman was suggested in this court, and Mary B.

Godman, as the executrix of his last will and testament, was substituted as the respondent.

The admitted facts are as follows: Henry E. Christensen died testate June 1, 1912. He was then a resident of Franklin county in this state. He was married to Anna M. Christensen in 1901. The will was admitted to probate on the 24th day of June, 1912, and on that date James W. McBurney was appointed administrator with the will annexed upon the petition of the widow Anna M. Christensen, who was also named as executrix in the will. On the 7th day of July, 1909, Henry E. Christensen made his last will and testament which, after the formal recital that he was then of sound and disposing mind, provides: First: Nominates Anna May Christensen as executrix of the will. Second: "I hereby direct my executrix to pay all my lawful debts and the expenses of my funeral as soon as may be conveniently possible for her so to do after my decease." Third and fourth: Bequeathes the sum of ten dollars to each of his two children. Fifth: "The rest, residue and remainder of my estate, both real and personal and wherever located, I give, devise and bequeath unto my said beloved wife Anna May Christensen." Sixth: Directs that his will be executed and his estate settled without the intervention of any court except such as the law requires. Seventh: Revokes all former wills and testaments.

After the admission of the will to probate and the appointment of the administrator with the will annexed, the surviving wife, Anna M. Christensen, filed a petition in the estate, setting forth her marriage, the death of the deceased, and the issuance of the policies upon the life of the deceased after the marriage, averring that she claims one-half of the proceeds and avails of the policies as her community property and the other half thereof in virtue of the terms of the will. The administrator answered, setting forth the proceeds and avails of the policies which had come into his hands in the amount heretofore stated, and prayed for an order to pay all just debts. The German-American State Bank intervened and

alleged that the estate was indebted to it "in a large sum," and that the estate, aside from the insurance policies, was insufficient "to pay any appreciable part of the indebtedness of the estate." It further alleged that it was the intention of the testator to appropriate the proceeds and avails of the policies to the payment of his debts. These matters were put in issue by the answer of the surviving wife.

Three of the policies, aggregating $12,000, were made payable to the insured's "executors, administrators or assigns;" one policy for $2,000 was made payable to "the estate of the insured," and two policies aggregating $3,000 were made payable to "the legal representatives of the insured." After finding the facts stated in this paragraph, the court allowed the administrator the following credits: (a) the reasonable expenses in making proof of death, $112.40; (b) premiums paid upon the policies when the insured was insolvent, $158.34; (c) statutory fees and compensation for collecting the policies, $629.57, and (d) $880, the amount theretofore paid by the administrator for the support of the widow and the two minor children. The court further directed the administrator to pay to each of the two minor children the sum of ten dollars, the amount of their respective bequests, and directed him to pay to M. M. Godman, as assignee of the widow, the sum of $14,537.83.

The court found that the reasonable value of the funeral expenses was $432.60, and that the reasonable expenses of the last sickness of the deceased amounted to $35. These two items the court refused to deduct from the proceeds and avails of the insurance policies. Findings 16 and 17 are as follows:

"(16) That in his lifetime the said Henry E. Christensen realized that he was insolvent and he believed and said that his life insurance would be sufficient to pay his debts after his death."

The assignee excepted to this finding.

"(17)   The estate of the said deceased is now insolvent and will probably be insufficient to pay the funeral expenses and the expenses of the last sickness of said deceased."

We find no exception to this finding.  The appellants excepted to certain conclusions of law.

(1)  Whether the policies in controversy were community property we need not decide.  They were subject to testamentary disposition to the extent of the testator's interest in them.

"Every person who shall have attained the age of majority, of sound mind, may by last will devise all his or her .estate, . . ."   Rem. & Bal. Code, § 1319 (P. C. 409 § 25).

Rem. & Bal. Code, § 1342 (P. C. 409 § 639) provides that one-half of the community property is subject to testamentary disposition.  This principle was recognized in *Grigsby v. Russell*, 222 U. S. 149, where it was held that the rule of public policy that forbade the taking out of insurance by one on the life of another in which he has no insurable interest, does not forbid the assignment by the insured of a valid policy to one not having an insurable interest in his life. ·

"Where the insurance is payable to *the insured, or to his estate, or to his executors,* the proceeds may be bequeathed by him and will pass under a general or residuary bequest of his property."   1 Underhill, Wills, § 56.

"Policies payable to the assured or his legal representatives may be ·disposed of by him by his will as part of his estate.  But policies. otherwise payable cannot be so disposed of."   25 Cyc. 895.

The law does not differentiate between policies payable to the "executors, administrators, or assigns" and policies payable to "the estate" of the insured.   *Mitchell v. Allis*, 157 Ala. 304, 47 South. 715.

The words "legal representatives" mean ordinarily "executors or administrators."   *Sulz v. Mutual Reserve Fund Life Ins. Co.*, 145 N. Y. 563, 40 N. E. 242, 28 L. R. A. 379 ; 25 Cyc. 887.   A policy made payable to the "legal representa-

tives" of the assured may be bequeathed to his fiancee by the terms of a residuary clause in his will. *Walker v. Peters,* 139 Mo. App. 681, 124 S. W. 35. *In re Heilbron's Estate,* 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602, impliedly recognizes this principle.

(2) The code, Rem. & Bal. § 569 (P. C. 81 § 881), provides "that the proceeds or avails of all life and accident insurance shall be exempt from all liability for any debt." Counsel for the appellants say that our statute is *sui generis*, and, in criticism of it, say:

"We think if the legislature had given a little thought to the matter and had used a little judgment in passing the law, it would have read as follows: 'The proceeds of all life insurance shall be exempt to the beneficiary from all debts of the decedent.'"

The legislature, however, did not so provide. As was said by Judge Hadley in *Flood v. Libby,* 38 Wash. 366, 80 Pac. 533, 107 Am. St. 851: "It would be difficult to employ language more sweeping and comprehensive than that used in the statute." In that case, it was held that endowment policies in the hands of judgment debtors were exempt from seizure and sale in a proceeding supplementary to execution. It was contended that life insurance which has a present surrender value to the holder was not exempt from liability for his debts, and that the statute only protects insurance payable to a beneficiary other than the assured and which was intended for the protection of the family or other beneficiary without any present or prospective interest in the insured. This view was rejected. In *Holden v. Stratton,* 198 U. S. 202, in considering this statute, it was said that the amendment of 1897, page 70, Rem. & Bal. Code, § 569 (P. C. 81 § 881), extending the exemption of 1895, page 396, to accident insurance, together with the fact that the statute is broader in its terms than the statutes of most other states, "conclusively show the intention of the Washington legislature to adopt a broader and more comprehensive exemption."

The statute received a liberal construction in *Northwestern Mut. Life Ins. Co. v. Chehalis County Bank*, 65 Wash. 374, 118 Pac. 326. In *Walker v. Spokane*, 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912 C. 994, in speaking of another statute, we said:

"When the language of the act is plain, free from ambiguity, and devoid of uncertainty, it is unanimously [universally] held that there is no room for construction, and that inconvenience following the enforcement of the law as expressed can have no weight in the construction of the statute."

In *Reiff v. Armour & Co.*, 79 Wash. 48, 139 Pac. 633, we said that it was the intent of the law to exempt the proceeds and avails of an insurance policy from the debts of the insured and from the debts of the beneficiary existing at the time the policy became available to him. A like rule of interpretation has been announced in other jurisdictions. *Bailey v. Wood*, 202 Mass. 549, 89 N. E. 147; *Harvey v. Harrison*, 89 Tenn. 470, 14 S. W. 1083; *Kimball v. Gilman*, 60 N. H. 54; *Gould v. Emerson*, 99 Mass. 154, 96 Am. Dec. 720; *Bishop v. Grand Lodge of Empire Order of Mutual Aid*, 112 N. Y. 627, 20 N. E. 562. The statute is too plain to require construction. Any other interpretation than to follow the simple and direct mandate of the statute would be legislation.

(3) The appellants contend that the court erred in holding that the proceeds and avails of the policies were exempt from the expenses of administration, the funeral expenses, and the expenses of last sickness. Rem. & Bal. Code, §§ 1464 to 1467, inclusive (P. C. 409 §§ 323 to 329), is relied upon as supporting this view. These are old statutes which in terms except funeral expenses and expenses of administration from certain specific exemptions. The statute under consideration is a later one and contains no exceptions. These sections of the code have no application to the proceeds or avails of insurance policies.

When the proceeds and avails of the policies became available to the widow, they were exempt, not only from the debts of the insured, but from her debts existing at that time. *Reiff v. Armour & Co., supra.* The argument implies that the fund was exempt from some debts, whilst the statute exempts it from all debts. The obligation of the estate to inter the remains of the deceased arose immediately upon his death. The policies came to the widow at the same moment as an exempt fund.

The question of the exemption of the proceeds of insurance policies was not involved or considered in *Butterworth v. Bredemeyer*, 74 Wash. 524, 133 Pac. 1061, or *Butterworth & Sons v. Teale*, 54 Wash. 14, 102 Pac. 768.

(4)    It is further argued that, if the proceeds of these policies are exempt, they should have been set aside to the widow and minor children under the provisions of Rem. & Bal. Code, § 1466 *et seq.* (P. C. 409 § 327). These sections have no application to the proceeds or avails of insurance policies which have been bequeathed to a designated legatee. Although not relied upon by the appellants, it is equally plain that Laws 1909, p. 556, § 36 (Rem. & Bal. Code, § 6158), have no application to the facts in the case at bar. *Frost v. Frost*, 202 Mass. 100, 88 N. E. 446, 132 Am. St. 476, 27 L. R. A. (N. S.) 184.

(5)    The appellants' main contention is that the direction to the executrix in the will to pay "all my lawful debts and the expenses of my funeral" is an appropriation of the proceeds and avails of these policies to those purposes. These are words commonly employed in a will. In construing a will it is the business of the court to discover the intention of the testator. It is almost universally held that a general direction in a will to the executor to pay the debts of the testator does not impress a trust upon exempt property bequeathed or devised to a designated person. The intention of the testator to appropriate exempt property to the payment of debts must appear by clear and apt language. The

trial court said that the words in the will are only the common formula of wills, and that they merely direct the executrix to pay the debts and funeral expenses of the testator if there be sufficient estate "legally applicable thereto." We have no doubt of the correctness of the court's interpretation. *Larson v. Curran,* 121 Minn. 104, 140 N. W. 337, 44 L. R. A. (N. S.) 1177; *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, 64 L. R. A. 560. In *Larson v. Curran,* the will, after the usual formal recitals, directed the executors "to pay out of my estate, as soon after my decease as shall be practicable, all the expenses of my last illness, all funeral expenses, and charges of all kinds relating thereto." Then followed this language: "It is my will and I hereby direct that all my just debts shall be paid out of my estate as soon as the same can be determined after my decease." This was followed by a devise and bequest of "all the rest, residue and remainder of my estate real, personal or mixed," to the testator's sister who was named executrix and given full power of sale both as devisee and as executrix. In holding that these words did not impress a trust upon exempt property, the court said:

"The general rule is that only property of the decedent that was unexempt in his lifetime is after his death subject to his debts, and we think that it is and ought to be the law that a general direction in the testator's will to pay his debts out of his estate, whether it precedes or follows in the will a devise of the exempt property, does not have the effect of charging the homestead with the payment of debts. The direction to 'pay all my just debts' 'out of my estate' is a purely formal phrase, commonly employed and really superfluous. To give it the meaning that it amounts to a direction by the testator that the homestead devised to his sister shall be charged with the payment of his debts would be to attach altogether too much significance to a well-worn stereotyped expression that really means nothing, any more than do the very common assertions by a testator that he is of sound mind, and aware of the uncertainties of this frail and transitory life."

Under statutes making real estate liable for the payment of debts of the testator if the personal estate is insufficient, it has been held that neither a general direction to the executor to pay debts nor a power of sale to pay the debts indicates an intention to charge the debts upon real estate. *Harmon v. Smith,* 38 Fed. 482; *Clift v. Moses,* 116 N. Y. 144, 22 N. E. 393; *Balls v. Dampman,* 69 Md. 390, 16 Atl. 16, 1 L. R. A. 545; *Hamilton v. Smith,* 110 N. Y. 159, 17 N. E. 740; *Gates v. Shugrue,* 35 Minn. 392, 29 N. W. 57.

It has been held that real estate is not charged with the payment of legacies unless the intention of the testator to that effect is expressly declared or fairly or satisfactorily inferred from the language and disposition of the will. *Lupton v. Lupton,* 2 Johns. Ch. 614. It has been held that a general direction to an executor to pay a legacy "out of my estate" does not make the legacy a charge on the real estate which was devised in the residuary clause of the will. *White v. Kauffman,* 66 Md. 89, 5 Atl. 865. These cases hold that the same rules which would charge debts against real estate would also charge legacies against real estate. If the words employed in the will should be held to impress a trust upon exempt property, the widow and minor children, when the estate was small, might in many cases be left homeless and penniless.

The appellants have cited, among other cases in support of their view, *Kiesewetter v. Kress,* 24 Ky. Law 1239, 70 S. W. 1065, and *Union Trust Co. v. Cox,* 108 Tenn. 316, 67 S. W. 814. The *Kiesewetter* case seems to support their contention. In a later case in the same court, *McLean v. Trabue,* 142 Ky. 806, 135 S. W. 309, the court said that, under the statutes of the state, the homestead was subject to the debts of the testator the same as other property. It was the homestead that was involved in the *Kiesewetter* case. In *Union Trust Co. v. Cox,* the testator named an executor to "administer upon my estate" by the following methods: First, to pay all just debts. Second, to invest the balance

of such funds as may remain as directed in the will. The will concluded with these words: "My estate (as a whole regardless of prior transfers) to be divided as above directed each one-third of my entire effects including all insurance." The policies were payable to the "executors, administrators and assigns." The court, after considering the peculiar phrasing of the will, reached the conclusion that it was the intention of the testator to appropriate the avails of his insurance policies to the payment of his debts.

We think that the sounder rule is, and it is practically the universal rule of interpretation, that the testator will not be deemed to have appropriated exempt property to the payment of his debts by a general direction in his will to pay debts, and that, before an intention to so appropriate exempt property will be ascribed to him, such intention must appear by clear and apt language.

The court permitted witnesses to testify that the deceased in his lifetime had said that he had sufficient insurance to pay his debts. Finding number 16, *supra*, was based upon this testimony. The will is clear, definite, and free from ambiguity, and its provisions cannot be either limited or extended by resort to parol testimony.

The judgment is affirmed.

CROW, C. J., PARKER, CHADWICK, and MORRIS, JJ., concur.