The **FIRST NATIONAL BANK OF DENVER, Mary Janet McKeon and Jack D. Henderson as Trustees under the Last Will and Testament of John B. McKeon, Deceased, Appellants,**

v.

**DENVER UNITED STATES NATIONAL BANK as Executor of the Estate of John B. McKeon, Deceased, and Colorado National Bank of Denver, Appellees.**

No. 10140.

United States Court of Appeals
Tenth Circuit.

April 2, 1969.

Harry A. King, Denver, Colo., for appellants.

Robert S. Zinn, Denver, Colo. (Davis, Graham & Stubbs, Richard M. Davis, Denver, Colo., on the brief), for appellee, Denver U. S. Nat. Bank.

Thomas J. Kerwin, Denver, Colo. (Hodges, Silverstein & Harrington, Richard W. Breithaupt, Denver, Colo., on the brief), for appellee, Colorado Nat. Bank of Denver.

Before HILL and HOLLOWAY, Circuit Judges, and BRATTON, District Judge.

HILL, Circuit Judge.

This appeal stems from an interpleader action under 28 U.S.C. §§ 1332, 1335, filed by State Mutual Life Assurance Company of America, wherein the proceeds from a life insurance policy, after the death of the insured, were paid into

the registry of the trial court. The plaintiff in that action was then dismissed as a party and the named defendants, as claimants to such proceeds, litigated their respective claims.

In 1963, the insured, John B. McKeon, made, published and declared his Last Will and Testament, naming the appellee, Denver United States National Bank and his wife, Mary Janet McKeon, as co-executors of such instrument. By the same instrument certain trusts were created, with Mary Janet McKeon as chief beneficiary and Denver United States National Bank, Mary Janet McKeon and Jack D. Henderson nominated as trustees. The insurance policy here involved was issued in November, 1964, and directed that upon the death of the insured the proceeds from the policy be paid to the Denver United States National Bank, as trustee under the above mentioned will.

The insured, McKeon, died in 1966, and the will was admitted to probate. Mary Janet McKeon qualified as trustee but not as co-executor and Denver United States qualified as executor but declined to act as trustee. Appellant, First National Bank of Denver, pursuant to the provisions of the will, was appointed trustee to fill the vacancy and appellee, Jack D. Henderson, became the third trustee, as provided in the will. The interpleader was filed because of the contest between the executor and the trustees concerning their rights to the $40,000 life insurance proceeds.

The assets of the estate are inventoried at $17,160.16 and claims have been filed against it aggregating over $49,-000. The trustees of the trust received over $34,000 from the decedent's pension plan fund. Mary Janet McKeon, as a result of her husband's death, received other insurance proceeds, title to the family residence, personal property and joint accounts aggregating over $74,000.

Appellee, Colorado National Bank of Denver, was named as a defendant in the interpleader because of its claim in the amount of $19,562.34 against the estate by reason of loans made to the decedent. These loans made to the decedent in 1965, were partly secured by 166 shares of American Telephone and Telegraph Company stock which was held jointly by the decedent and his mother, Marjorie McKeon, the other substantial claimant.

The case was tried to the Court and a Decree and Judgment was entered determining that the trustees were entitled to receive the insurance policy proceeds and the trustees were directed to pay to the executor such portion of the insurance proceeds as will be needed by the executor to fully pay the debts of the estate.

■ A threshold question presented concerns the scope of this appeal. The trial court first decreed that the policy proceeds be paid to the trustees. Denver United States, as appellee, attacks that part of the decree, and in effect, asks us to reverse the trial court and direct the proceeds to be paid to the executor. Appellants took the appeal and challenged only that part of the decree that orders them to pay to the executor such portion of the insurance proceeds as is necessary to pay the debts of the estate. Denver United States did not cross-appeal and cannot now expand the narrow issue presented by appellants.[1] We will not disturb or reconsider that part of the decree ordering the proceeds paid to the trustee. Accordingly, the sole issue is whether the trial court erred in ordering the trustees to pay to the executors so much of the proceeds from the policy as will be necessary to satisfy the claims of creditors ultimately approved by the state probate court.

The district court in considering whether the proceeds should be made available for the benefit of the creditors of the insured's estate, noted that Colo.Rev.Stat.Ann. § 153–19–1(7) (1963) provides that an insured who designates

---

1. Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47 (10th Cir. 1963). See generally, 9 Moore's Federal Practice ¶ 72.05 [2] (1968).

a testamentary trustee as the beneficiary of a life insurance policy may direct the extent to which the proceeds shall be subject to the payment of debts. It was then concluded that Article I of the will directing that the executors pay the just debts, and Article XIV providing that "said court shall not continue the administration of my estate after the payment in full of all debts," operated as adequate indicators of the insured's intent to "pay his debts not only out of the probate assets as they existed at the time of his death, but also from the other available sources." This conclusion was buttressed by the fact that one of the two principal claimants against the estate is the insured's mother who apparently loaned her son substantial sums of money and who is also the joint owner of the corporate shares now held by Colorado National Bank, the other major claimant. The trial judge believed that it would be unreasonable to assume that the decedent, knowing the extent of his property and the amounts provided for his wife and children after death, would not have provided for the payment of the debts owed to his mother and Colorado National. Reliance was placed upon Gardner v. Masteller, 89 Colo. 523, 4 P.2d 686 (1931) as providing a legal basis for the conclusion that the terms of the will and the surrounding circumstances adequately supported a finding that the insured intended to subject the insurance proceeds to the claims of his creditors.

At the outset it should be acknowledged that Colorado, following the general rule, has provided by statute that insurance proceeds made payable to the trustees of a trust created in a will, are not to be included in the insured's estate "or to be subject to the claims of his creditors." Colo.Rev.Stat.Ann. § 153–19–1(6) (1963). This general exemption from the claims of creditors is, however, subject to invalidation if the insured expresses a contrary intention. Colo.Rev.Stat.Ann. § 153–19–1(7) (1963). Thus, if the creditors are to be entitled to the proceeds, an appropriate

declaration to that effect must be found in the terms of the instruments disposing of those proceeds. Since the insurance policy merely directs payment to the testamentary trustees, we must find such intent, if one exists, in the provisions of the will. In so doing, we are fully aware that such intent is to be ascertained "from the instrument in its entirety." Meier v. Denver United States National Bank, 431 P.2d 1019, 1021 (Colo.1967).

The pertinent portions of the insured's will provide the following:

"Article I

"I direct my Executor to pay my just debts  *  *  *  and to pay, as an expense of administration, all inheritance, estate, legacy, succession, or other death taxes payable in respect of my estate  *  *  *  or upon the proceeds of any insurance on my life  *  *  *.

"Article VII

"A. All the rest and residue of my property of whatever kind and wherever located that I own at my death, remaining after the payment of all death taxes as directed by Article I of this Will, I give to  *  *  *  [the testamentary trustees] in trust. Such remainder of my estate, together with the proceeds of any insurance policies on my life payable directly to the Trustees hereunder as the beneficiary thereof, all of which is hereinafter in this Article sometimes referred to as 'my trust estate' shall be held, managed, controlled, invested and reinvested in accordance with the authority hereinafter conferred upon the Trustees.  *  *  *

"Article XIV

"It is my intention and desire that the trust estate herein provided for shall be administered free from the jurisdiction and control of the court having jurisdiction of the settlement of my estate, and that said court shall not continue the administration of my estate after the payment in full of all debts, and that such court shall proceed to final settlement of my estate as in other cases and order the trust funds or property to be turned

over, conveyed and delivered to my Trustees as such."

■ As can readily be seen, Article I contains the standard provision for the payment of debts and taxes. Because that paragraph nowhere attempts to define the fund to be used for that purpose, Article I can have little significance in the present context. Rather, in view of the separate treatment of the estate and the insurance proceeds, the inference if any, is that the proceeds were not to be subject to the payment of debts. Similarly, Article XIV by indicating that the trust estate is to be administered free of the jurisdiction of the court administering the insured's estate, is of little assistance. The language employed is taken from Colo.Rev.Stat.Ann. § 153–14–11(3) (a) (1963), and its predecessor, Colo.Rev.Stat.Ann. § 152–14–11(3) (1953) which provided that if "it shall appear to the county court that it was *not* the intention of the testator that the *court should continue the administration of the estate after the payment in full of all debts * * * such court may proceed to final settlement of such estate as in other cases and order the trust fund or property to be turned over to the trustee as such * * *."* [Emphasis supplied]. It is apparent that rather than indicating an intent to subject the insurance proceeds to the payment of debts, the paragraph was meant only to free the trust from court administration. Any significance in the phrase "payment in full of all debts" is negated by the fact that it represents an obvious use of "boilerplate" to accomplish an entirely different purpose than that of providing for the payment of debts.

The conclusion that the provisions of the will do not support an inference of the requisite intent is further demonstrated by the language of Article VII. In that paragraph the insured expressly separated the insurance proceeds from that portion of the estate remaining after the payment of debts. By providing that "such remainder of my estate, together with the proceeds of any insurance policies" shall be held by the trustees, the insured must be taken to have understood that all of the proceeds, which would not form a part of his probate estate, would be remaining after the payment of debts and would be managed and controlled as part of the trust corpus.

■ Moreover, any reliance upon the surrounding circumstances, such as the status of creditors and beneficiaries, seems wholly misplaced. While it is true that a will speaks only as of the date of death, for purposes of interpretation the will must be construed in light of the circumstances existing at the time of its execution. Heinneman v. Colorado College, 150 Colo. 515, 374 P.2d 695, 698 (1962). When considered in that context, it is not unreasonable to assume that the insured would not have provided for the payment of the claims of his mother and Colorado National. At the time of the execution of the will and subsequent acquisition of the insurance policy, there is nothing to indicate that the insured had incurred any substantial obligations, much less the obligations sought to be enforced here.[2] Instead of supporting the conclusion that the insured must have intended to provide for the payment of the claims against the estate, the surrounding circumstances indicate that there were no claims to be provided for, and thus no reason to indulge a vain attempt to discover an intent that was never there.

In reaching this conclusion, we are not unmindful of the weight to be given to interpretations of local law by a district court. Gates v. Willford, 406 F.2d 890 (10th Cir.1969); Smith v. Greyhound Lines, Inc., 382 F.2d 190 (10th

---

2. The claim of Colorado National is based upon loans made to the insured during the year 1965; all more than one year after the drafting of the will and at least a few months subsequent to the purchase of the insurance policy. There is nothing in the record to indicate when the claim of the mother was first established.

Cir.1967). Indeed, we fully agree with the basic legal propositions expressed by the trial court as a result of its interpretation of Gardner v. Masteller, 89 Colo. 523, 4 P.2d 686 (1931). The case aptly indicates that the intent of the decedent as expressed in the will is clearly controlling. Yet it is equally apparent that the factual situation of the Gardner decision is completely dissimilar to that presented in the case at bar. In that case the court sought to ascertain the intent of the testator. The same question is presented here, but there the similarity ends. The court in Gardner was not faced with the task of discerning the proper disposition of insurance proceeds exempted by statute from the claims of creditors. There was no need to consider the exemption statute or the reasoning underlying its protection of such proceeds. Thus, Gardner merely provides broad guidelines within which each case must turn on its particular facts.

The particular facts present here in the language of the will and the surrounding circumstances, indicate that the insured did not even consider subjecting his insurance to the claims on his estate. Certainly the intention of a testator to appropriate exempt property for the payment of debts must appear by clear and apt language.[3] To interpret the provisions of the present will as being indicative of an intent to subject proceeds to debts, would be tantamount to a reading of all wills to the same effect for surely all properly drafted wills contain substantially the same general provisions. To construe those provisions in the manner urged here would completely undermine the provisions of Colo.Rev.Stat.Ann. § 153–19–1 (1963). It follows then that the insured did not indicate an intent to subject the insurance proceeds to the claims of his creditors. Any finding to the contrary is clearly erroneous.[4]

The portion of the judgment appealed from is reversed.

---

3. German-American State Bank v. Godman, 83 Wash. 231, 145 P. 221 (1915); In re Milton's Estate, 48 Wash.2d 389, 294 P.2d 412 (1956). See Annot., 56 A.L.R.2d 865, 866 (1957).

4. Rule 52(a), F.R.Civ.P.; Hill v. Field, 384 F.2d 829 (10th Cir. 1967).