UNION TRUST CO *v.* COX.

(*Nashville.* February 8, 1902.)

1. INSURANCE, LIFE. *Bequest of to pay debts valid.*

An assured, having a life policy payable to himself, "his executors, administrators, and assignees," may dispose of same by will, so as to subject same to the payment of his debts to the exclusion of his widow and children.

Code construed: § 4030 (S.); § 3135 (M. & V.); § 2294 (T. & S.).

Cases cited: Rison *v.* Wilkerson, 3 Sneed, 569; Williams *v.* Carson, 9 Bax., 516.

2. SAME. *Same. Example.*

Testator directed his executor first to pay "all just and honorable debts" of his estate, and then disposed of the balance of his property, including a large amount of life insurance, among his widow and children. His estate, outside the life insurance, was grossly inadequate to pay his debts.

*Held:* His creditors are entitled to be paid out of the life insurance, to the exclusion of the widow and children.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. H. H. COOK, J.

JOHN M. GAUT and JAMES S. PILCHER for Union Trust Co.

M. H. MEEKS and JOHN CARUTHERS for Cox.

E. F. LANGFORD for minor defendants.

BEARD, J. The complainant is the owner of a promissory note executed in his life time by the late H. M. Cox, the testate of the defendant, J. M. Cox, on which there is a balance due of about $3,400.00, and filed the present bill to obtain a decree for this balance, and to subject to its satisfaction a sufficiency of the proceeds of three insurance policies carried by the testator on his life, payable on their face to "his executors, administrators, and assignees," which, after his death, had come to the hands of the defendant, his executor.

The record shows that, in addition to these three policies, aggregating $25,000.00, the testator at the time of his death was carrying three others on his life, to wit: one for $22,500.00, payable to his wife, and two for $5,000.00 each, payable respectively to his son and daughter.

After the executor qualified, he filed an inventory, in which he charged himself with $20,000.00 collected by him out of two of the policies mentioned in the first paragraph above, and with the other of these policies ˙ amounting to $5,000.00, not then collected. ˙ The only additional personal

estate, as shown by this inventory, which had come into his possession, or was likely to do so, was $34.00.

This was the condition of the estate when the present bill was filed, and there is nothing in the record to indicate that it has improved since. So it is evident from this statement that the only hope of the complainant is in succeeding in doing what its bill is filed for—that is, appropriating a sufficiency of the insurance money thus collected to the satisfaction of its debts.

It is conceded that this fund held by the executor, under § 4030 of the (Shannon's) Code, would pass to the widow and children of the assured, free from the claims of creditors, all else out of the way, but it is insisted that by a holographic will, duly admitted to probate after his death, the testator had charged it in the hands of his executor with the payment of all of his "just and honorable debts," of which the complainant's was one.

That the assured, in his lifetime, might have made a legal alienation of these policies, payable to "his executors, administrators, and assigns," was determined as early as the case of *Rison* v. *Wilkerson,* 3 Sneed, 569, and that he had the power to dispose of them and their proceeds by will, was as clearly announced in *Williams* v. *Carson,* 9 Bax., 516. Since the announcement of the controlling principle in these cases, it has

been frequently applied, and the authority of the cases themselves has not been the subject of challenge.

So the only question here is one of construction—has the testator, by his will, made the appropriation insisted upon by complainant?

The will is as follows:

"Being in sound state of mind & realizing the uncertainty of life—I hereby appoint my Brother, Jas. Cox—to administer upon my estate "without bond," should he survive me—& by the following methods—

1st. to pay all just & honorable debts that may exist. 2nd. to invest the balance of such funds as may remain in good safe properties—I would suggest well located farm lands—& divided Equally—to each—(separate) my wife Lena Cox—my two children Nannie Mai & Herschel Cox—to each 1-3 of my whole effects—to Mrs. Cox I will & bequeath $500 Five Hundred Dollars—over and above 1-3rd share—This amt she is to use as she so desires—but the bal—Is to be held by her, as intailed property, so long as she is a widow to enjoy the Income—as may result from her interest in my estate, the same method to Nannie Mai—only she is to hold & use such Income as may be during her life—with no power to mortgage or sell—at her death if no heirs—Then such properties—are to divert to my estate as to Herschel, he can sell or mortgage—at the

age of 21—yrs—provided he be an honorable & sober minded man otherwise he is to hold & enjoy such incomes as may accrue from said Investments—during his life—& if no legitimate heirs, at his death—such properties held by him (is as referred to above)—to divert back to my general estate according to regular form of law, regulating the same, I will to my brother (if he survives me) a compensation of two 'hundred and fifty dollars—for his trouble—In executing my affairs—& appoint him guardian for my two children Nannie Mai & Herschel Cox should they not be of age—& if still uneducated, That a sum of $1.000 for each be set aside as additional fund to finish their proper schooling—this to be used from the total & general funds—of my estate. Then the balance to be divided equal as before set forth. Should J. M. Cox survive me—& act as above directed, I desire that no bond be required of him, In any of the above capacities. My wife is to have the power to dictate the disposition of the several shares—& their respective incomes as above referred to—during her widowhood —& to the ages of 21 years—of my two children My estate (as a whole) regardless 'of prior transfers) to be divided as above directed each 1-3d of my entire effects, including all insurance. Aug. 5th, 1895. H. M. Cox."

While this will is disjointed and inartificial, we think there is no serious trouble in ascertain-

ing the intention of the testator. Having first
named his brother as the person whom he de-
sires "*to administer*" upon his estate, he enjoins
upon him to pay "all · just and honorable debts
that may exist."

The testator then provides that the "balance of
such funds as may remain," after the payment of
debts, is to be invested "in good safe properties,"
and divided equally between his widow and two
children, to each "one-third of my (his) whole
effects," save that the widow is to receive five
hundred dollars, in and above her share of one-
third. After fixing the terms upon which his
legatees are to hold their respective shares, he
then gives to his brother, the executor, · $250.00
for executing the trusts of his will, and provides
that one thousand dollars be set aside out of the
"total and general · funds of my (his) estate," for
each one of his children, as "an additional sum"
to be used in finishing their education.

Up to this point it will be observed that the
testator has not alluded in express terms to the
subject of his life insurance policies or the pro-
ceeds of them, but it is difficult to resist the
conclusion that he had them in mind in making
the foregoing disposition of his estate.

That he did have them in mind, as constitut-
ing a part of his estate, and, as it proved in
the end, its only substantial part, which was to·
pass into his executor's hands, subject to the

24 P—21

trusts enumerated, is not left to an inference alone from the general terms used; in the last clause, the testator declares his intention, we think, in unmistakable terms. Repeating the clause, it is as follows: "My estate (as a whole), (regardless of prior transfers), to be divided as above directed, each one-third of my *entire effects,* including all insurance."

However inartificial the instrument is, the intention clearly inferable from it is, that out of the entire estate coming to the executor, all just and honorable debts, and the compensation of the executor were to be paid, and then the balance was to be divided in the manner as directed therein.

In other words, the will may be thus paraphrased:

"I appoint my brother, James Cox, to *"administer"* upon my estate without bond," as follows:

To pay all just and honorable debts, and his compensation for service rendered by him, and then to invest such balance as may remain in good safe properties, for the benefit of my wife, Lena Cox, and my two children, Nannie Mai and Herschel Cox—to each one-third of my whole effects. This division, however, is subject to the following conditions: To my wife, Lena Cox, I will and bequeath $500.00, over and above one-third, to be used as she desires, and if my children, at the date of my death, shall not have completed their education, I will that $1,000.00·

for each of them be set aside, in addition to the one-third bequeathed to them, to finish their education, this to be taken from the total of general funds of my estate—the balance to be divided equally as above set forth.

It results that the decree of the Court of Chancery Appeals . is reversed, and a decree will be entered in accordance with the prayer of complainant's bill.