269 P.3d 1189

In the Matter of the ESTATE OF Kathryn L. KING, Deceased.

John R. DiFilippo, Petitioner/Appellee,

v.

Miles Elliot Reed, as Personal Representative for the Estate of Kathryn L. King and Trustee for the K.L. King Family Trust, Respondent/Appellant,

and

Rose F. Simpkin, a creditor of the Estate of Kathryn L. King; JPMorgan Chase Bank, N.A., a creditor of the Estate of Kathryn L. King; Colonial Capital, LLC, a creditor of the Estate of Kathryn L. King; Doe Creditors I through X, Appellees.

No. 1 CA–CV 09–0776.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 7, 2012.

The Payne Law Office By Christopher D. Payne, Phoenix, Attorneys for Petitioner/Appellee John R. DiFilippo.

The Armstrong Firm By James P. Armstrong, Phoenix, Attorneys for Petitioner/Appellee Nicholas DiFilippo, a minor.

Fennemore Craig, P.C. By Julio M. Zapata, Timothy J. Berg, Theresa Dwyer–Federhar, Scott McDonald, Phoenix, and Dana Law Firm Scottsdale By Matthew S. Dana, Mark E. Andersen, Scottsdale, Attorneys for Respondent/Appellant Miles Elliot Reed.

James E. Brown, P.C. By James E. Brown, Phoenix, Attorneys for Creditor/Appellee Rose F. Simpkin.

Poli & Ball, P.L.C. By Jeffrey Messing, Kesha A. Hodge, Phoenix, Attorneys for Creditor/Appellee JPMorgan Chase Bank, N.A.

Monroe, McDonough, Goldschmidt & Molla, P.L.L.C. By D. Rob Burris, Tucson, Attorneys for Creditor/Appellee Colonial Capital, L.L.C.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Appellant Miles Elliot Reed ("Reed"), the trustee of the K.L. King Family Trust (the "Trust"), appeals from the probate court's ruling that the proceeds of a life insurance policy on Kathryn L. King ("King") paid to the Trust as beneficiary were not statutorily protected from the reach of her estate's creditors. The court held that Arizona Revised Statutes ("A.R.S.") section 20–1131(A) (2010), protects proceeds paid to

a trust from the insured's creditors, but that the Trust waived that statutory protection. We agree with the probate court that A.R.S. § 20–1131(A) protects the insurance proceeds paid to the Trust. However, we hold there was no clear, effective waiver of that protection in the Trust language. Accordingly, we reverse the probate court and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 King died in November 2008. King had created the Trust of which her minor son, Nicholas, was the sole beneficiary. King designated the appellant, Reed, as the personal representative of her estate and the trustee of the Trust. King had also purchased a life insurance policy, which she designated an asset of the Trust, and named the Trust as the beneficiary of the policy.

¶ 3 At her death, King was "upside down" on various real estate and other loans, such that her estate had insufficient funds to pay her debts. Upon King's death, the life insurance policy paid $2,000,000 into the Trust. Although the Trust contained other assets, such as property, stocks, and bank accounts, those assets were insufficient to pay King's debts.

¶ 4 Appellee John R. DiFilippo is King's former husband and Nicholas's father. DiFilippo filed claims as a creditor against King's estate, along with Rose F. Simpkin, JPMorgan Chase Bank, and Colonial Capital, L.L.C., (collectively "Creditors").

¶ 5 DiFilippo filed a petition asking the probate court to allow his claim against the "Estate and/or Trust." Reed opposed the claim, arguing that life insurance proceeds were exempt from claims against a decedent's estate pursuant to A.R.S. § 20–1131(A). Reed also contended that A.R.S. § 14–10504(D)(2) (Supp.2011) protected the life insurance proceeds from Creditors.[1] In reply, Chase, Colonial Capital, and DiFilippo argued that A.R.S. § 20–1131(A) did not ex-

empt life insurance proceeds unless those proceeds were payable to a third person "other than the person effecting the insurance or [the person's] legal representatives." They asserted that Reed, as trustee, was King's legal representative and that, because King purchased the life insurance policy, the statute offered no protection for the proceeds.

¶ 6 The probate court held "that A.R.S. § 20–1131(A) protects insurance proceeds paid to trusts." However, it also held the express terms of the Trust waived the protection and directed that the insurance proceeds be used to pay debts of King's estate.

¶ 7 Reed filed a motion for clarification/reconsideration, which the probate court denied. Reed filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(9) (Supp.2011).

## DISCUSSION

¶ 8 This appeal requires that we address two issues of first impression. First, whether A.R.S. § 20–1131 protects life insurance proceeds from the insured's creditors when the proceeds are paid to a trust whose beneficiary is a third party. Second, if the statute does protect the proceeds, whether the language of the trust documents waives such protection when that language generically provides the trust should pay the unpaid debts of the estate.

¶ 9 In construing a statute, we review the trial court's ruling *de novo*. *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 136, ¶ 49, 180 P.3d 986, 1001 (App.2008) (citation omitted). In doing so, the ultimate goal is to give effect to the legislature's intent. *Mail Boxes, etc. v. Indus. Comm'n of Ariz.*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). In construing a trust, the goal is to determine the intent of the trustor. *In re Estate of Zilles*, 219 Ariz. 527, 530, ¶ 8, 200 P.3d 1024, 1027 (App.2008). To find that intent, we look at the four corners of the document. *Id.* We review *de novo* mixed questions of law and fact. *In re Estate of*

---

1. We cite the current version of the applicable statutes because no revisions material to this decision have since occurred.

*Ward,* 200 Ariz. 113, 115, ¶ 9, 23 P.3d 108, 110 (App.2001).

## I. Section 20–1131(A) protects life insurance proceeds paid to a third-party trust beneficiary.

██ ¶ 10 Life insurance proceeds paid to a decedent's beneficiary are exempt from claims of creditors of the decedent's estate pursuant to A.R.S. § 20–1131(A). *See May v. Ellis,* 208 Ariz. 229, 230, 231, ¶¶ 1, 11, 92 P.3d 859, 860, 861 (2004). We hold that the language of § 20–1131 is broad enough to also protect such proceeds when they are paid to a trust created by the insured in which the beneficiary is a third party.

¶ 11 Section 20–1131(A) provides:

> If a policy of life insurance is effected by any person on the person's own life … in favor of another person having an insurable interest in the policy, or made payable by assignment, change of beneficiary or other means to a third person, the lawful beneficiary or such third person, other than the person effecting the insurance or the person's legal representatives, is entitled to its proceeds against the creditors and representatives of the person effecting the insurance.

¶ 12 Statutes such as § 20–1131(A) are to be construed liberally because legislatures that have enacted such statutes wanted to encourage individuals to provide for their heirs and in doing so, protect their heirs from their creditors. *See Wilmington Trust Co. v. Barry,* 338 A.2d 575, 577 (Del.Super.Ct.1975); *DeCeglia v. Estate of Colletti,* 265 N.J.Super. 128, 625 A.2d 590, 595 (N.J.Super.Ct.App.Div.1993); *Butler v. Fowler,* 28 Tenn.App. 217, 188 S.W.2d 612, 614 (1944).

¶ 13 Title 20 defines a "person" as "an individual, company, insurer, association, organization, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation and entity." A.R.S. § 20–105 (2002). Creditors cite no law in support of their contention that § 20–1131(A) does not protect life insurance proceeds paid to a trust beneficiary from the settlor's creditors, and we find none.[2] Title 20 defines "person" so broadly that we find a trust is an "entity" for purposes of A.R.S. § 20–1131(A). *See State v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 192 Ariz. 390, 393, ¶ 12, 966 P.2d 557, 560 (App.1998) ("The use of a word as broad as 'entity' shows a legislative intent to broadly define 'person' for the purpose of the insurance laws.").

¶ 14 We disagree with Creditors' argument that A.R.S. § 20–1131(A) does not protect the life insurance proceeds because King was the trustee of the Trust at the time she effected the policy, the Trust was the owner and beneficiary of the policy, and the policy was an asset of the Trust. As the Louisiana Court of Appeals aptly stated, an insured's creditors cannot reach life insurance proceeds on the life of the insured because the proceeds "do not come into existence during his life, never belong to him, and pass by virtue of the contractual agreement between the insured and the insurer to the named beneficiary." *T.L. James & Co. v. Montgomery,* 332 So.2d 834, 847 (La.1976).

¶ 15 The proceeds of the life insurance proceeds were never King's nor Reed's. Although King bought the life insurance policy and named the Trust as beneficiary when she was the trustee, only her death triggered payment of the proceeds and a change in the trustee to Reed, her personal representative.[3] However, Reed was not the beneficia-

---

**2.** Colonial Capital also argues that because it is a judgment creditor of the Trust, not the Estate, it can reach the life insurance policy proceeds. However, Colonial Capital's position as a judgment creditor of the Trust was not presented to the probate court as part of the proceedings below. Arguments related to its status as a creditor of the Trust are therefore not before this Court, and we do not address them.

**3.** Title 20 does not provide the definition of "legal representative," but Title 14 does define it as

"a personal representative or conservator." A.R.S. § 14–9101(8) (2005). That title defines a personal representative as an "executor, administrator, successor personal representative, special administrator and persons who perform substantially the same function under the law governing their status." A.R.S. § 14–1201(40) (Supp.2011). Because Reed is the executor of King's estate, he was her personal representative.

ry of the life insurance proceeds, the Trust was the beneficiary. Neither Reed nor King was the beneficiary of the Trust; the sole beneficiary was King's minor son. Although the policy may have been an asset of the Trust, that does not affect the applicability of § 20–1131(A). Therefore, neither King (who purchased the policy) nor her personal representative (Reed) was the beneficiary of the policy proceeds and § 20–1131(A) protects the policy proceeds.

¶ 16 To avoid this result, Colonial argues that because the trust was a revocable trust, it was liable to creditors of King under A.R.S. § 14–10505(A)(3) (Supp.2011), which provides that the property of a revocable trust is subject to the claims of the settlor's creditors to the extent that the settlor's probate estate is insufficient to meet the claims. We disagree with Colonial. Section 14–10505(A)(3) provides that the trust is liable for such debts "subject to the settlor's right to direct the source from which liabilities will be paid" and such liability is precluded "to the extent that state or federal law exempts any property of the trust from these claims...." Given that A.R.S. § 20–1131(A) applies to the policy proceeds in the Trust assets and, as discussed *infra* Part II, King did not direct that the proceeds be used to pay the estate debts or effectively waive the protection of § 20–1131(A), § 14–10505(A)(3) has no bearing.

¶ 17 Creditors also argue that the passage of the Arizona trust code, found in Title 14, supports their contention that the Trust is liable to creditor claims against King as the trustor. They point out that in 2008, the legislature adopted A.R.S. § 14–10504(D)(2) as part of the new trust code, which provides that "[t]o the extent that under Arizona law life insurance proceeds ... are exempt from ... the reach of creditors, if the death benefit is payable to an individual beneficiary, the ... proceeds ... are also exempt from ... creditors if payable to a trust ... [for] that individual." Thus, they argue, the 2008 en-

actment of § 14–10504(D)(2), which protects from the settlor's creditors life insurance benefits going to a trust, would be superfluous if A.R.S. § 20–1131(A) already offered such protection.[4]

¶ 18 "If the language of a statute is clear and unambiguous, we must give it effect without resorting to any rules of statutory construction." *State v. Barnett,* 209 Ariz. 352, 354, ¶ 7, 101 P.3d 646, 648 (App.2004) (quoting *State v. Johnson,* 171 Ariz. 39, 41, 827 P.2d 1134, 1136 (App.1992)). "[E]ven where statutory language is clear and unambiguous, we will not employ a plain meaning interpretation [that] would lead to ... a result at odds with the legislature's intent." *State v. Estrada,* 201 Ariz. 247, 251, ¶ 19, 34 P.3d 356, 360 (2001) (citation and internal quotation marks omitted).

¶ 19 Although A.R.S. § 20–1131(A) could have been more artfully written, it is not ambiguous and the Creditors' arguments do not make it so. *See Dearing v. Ariz. Dep't of Econ. Sec.,* 121 Ariz. 203, 206, 589 P.2d 446, 449 (App.1978) (refusing to allow the appellants' arguments that seemingly created ambiguity to confuse the issue when there was no ambiguity).

¶ 20 In any event, we do not view the passage of A.R.S. § 14–10504(D)(2) as undermining the same protection offered by A.R.S. § 20–1131(A). *See* 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes & Statutory Construction § 22:13, at 294 (7th ed. 2009) ("A legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together."). In enacting § 20–1131(A), the legislature broadly protected beneficiaries of life insurance policies from the insured's creditors, and in its later passage of the Arizona trust code it explicitly set forth those protections for individual and trust beneficiaries of life insurance

4. As Creditors also argue and the session laws provide, § 14–10504(D)(2) applies to judicial proceedings concerning trusts commenced before January 1, 2009, unless the court finds that application of a particular provision of the act would prejudice the rights of the parties, in which case the provision would not apply. 2008 Ariz. Sess. Laws, ch. 247, § 18 (2d Reg. Sess.). The probate court did not state whether § 14–10504(D)(2) applied retroactively to this case. We resolve the case based on the language of § 20–1131(A) and thus do not address this issue.

policies.[5] The legislature passed the new trust code to signal to potential trust settlors that "Arizona [is] a 'trust friendly' jurisdiction" by making clear that life insurance proceeds paid to individual and trust beneficiaries are protected from creditors of both the settlor and beneficiaries. *See* Les Raatz, *The Arizona Trust Code*, Arizona Attorney Magazine, Jan. 2009, at 20, 21. The trust code simply expressly set forth the scope of the protections already implicitly afforded in § 20–1131(A). Therefore, we agree with the probate court that § 20–1121(A) protects life insurance policy proceeds paid to a trust beneficiary from the insured/settlor's creditors.[6]

## II. The trust did not use clear, effective language to waive the protections of A.R.S. § 20–1131(A).

 ¶ 21 Persons protected by a statutory provision can waive that protection, *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 115–16, 919 P.2d 1381, 1386–87 (App.1996), unless "waiver is expressly or impliedly prohibited by the plain language of the statute," *Verma v. Stuhr*, 223 Ariz. 144, 157, ¶ 68, 221 P.3d 23, 36 (App.2009). When a statutory protection can be waived, the waiver must be clearly intended. *Id.* at ¶ 69. A waiver is sufficiently express if "the language of waiver clearly conflicts with the right and thereby demonstrates the beneficiary's intent to waive." *Id.*[7]

¶ 22 Section 20–1131(A) does not expressly or impliedly prohibit a waiver of its protections. Further, every court that has considered whether a person can waive the statutory protections afforded to life insurance proceeds has held that the protections can be waived, but only in clear, effective language. *In re Grilk's Will*, 210 Iowa 587, 231 N.W. 327, 328 (Iowa 1930) ("Intention to waive the benefit of exemption laws must be clearly expressed."); *Adams v. Garraway*, 179 Tenn. 93, 162 S.W.2d 1086, 1086 (1942); *German–Am. State Bank of Ritzville v. Godman*, 83 Wash. 231, 145 P. 221, 224–25 (1915) ("The intention of the testator to appropriate exempt property to the payment of debts must appear by clear and apt language."), *rev'd on other grounds, In re Blattner's Estate*, 89 Wash. 412, 154 P. 796 (1916), *rev'd on other grounds, In re Blattner's Estate*, 92 Wash. 48, 158 P. 1015 (1916). Courts "will *not* presume, from general terms employed in a will, that the testator intended to deprive his widow and children of a fund secured to their exclusive benefit by the statute." *Cooper v. Wright*, 110 Tenn. 214, 75 S.W. 1049, 1051 (1903) (emphasis added).[8]

---

5. Historically, legislatures exempted life insurance proceeds from the reach of the insured's creditors to protect and provide for his or her family "without regard to the size or solvency of the estate." *Am. Trust & Banking Co. v. Twinam*, 187 Tenn. 570, 216 S.W.2d 314, 317 (1948); *see also In re Caldwell's Estate*, 204 Iowa 606, 215 N.W. 615, 616–17 (Iowa 1927).

6. Moreover, we note that the legislature failed to state to which creditors, whether those of the settlor or of the beneficiary, § 14–10504(D)(2) applies. The protection is found within the section protecting trust assets from beneficiaries' creditors, not protecting trust beneficiaries from the settlor's creditors, which is in § 14–10505.

 Even if § 14–10504(D)(2) was meant to create protections for life insurance proceeds payable to trusts rather than to amend existing law, contrary to the Creditors' contention, the probate court never decided whether § 14–10504(D)(2) applied retroactively to this case. The probate court in its ruling stated only that it found § 20–1131(A) protected life insurance proceeds paid to trust beneficiaries from reach of the settlor's creditors, but that King waived the protection.

7. Chase argues Reed waived this issue by not raising it in the probate court. However, Reed argued the trust language must state that life insurance "monies are intended to also pay my creditors" for the settlor to waive the protections of A.R.S. § 20–1131(A). Reed argued this issue and the probate court discussed the argument; therefore, Reed adequately preserved the argument for appeal.

8. Although at issue in this case is the language of the Trust and will instead of solely a will as in the cases cited, the principles at hand are the same. *See* A.R.S. § 14–10112 (Supp.2011) ("The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property.").

During oral argument on the matter, the court said: "If I come to the conclusion that 20–1131(a) [sic] protects those proceeds, I really don't need to get to the issue of whether Title 14 applies. Would the parties agree with that?". The parties agreed with the court.

¶ 23 When a probate estate includes funds from a life insurance policy, various courts have considered whether a generic statement in the estate documents that the estate shall pay the estate's debts is sufficient to waive statutory protection of the insurance proceeds from the deceased's creditors. In cases, such as the one before us, where there were potentially valuable assets in the estate other than a life insurance policy, the courts have held that a directive to pay the testator's debts must explicitly include the life insurance proceeds in that directive; a general directive to pay the debts from the estate, without mention of the life insurance proceeds, does not waive the statutory exemption. *See In re Grilk's Will,* 231 N.W. at 328–29; *Twinam,* 216 S.W.2d at 317–18; *Adams,* 162 S.W.2d at 1086; *Am. Trust Co. v. Sperry,* 157 Tenn. 43, 5 S.W.2d 957, 958–59 (1928); *Cooper,* 75 S.W. at 1050; *Waldrum v. Waldrum,* 14 Tenn.App. 342, 344 (1931); *Godman,* 145 P. at 223–24; *see also In re Estate of Milton,* 48 Wash.2d 389, 294 P.2d 412, 413, 414–15 (1956) (holding that where the estate documents provided that "[i]t is contemplated that the funds for the purpose of paying the above indebtednesses will be derived from the proceeds of my life insurance as to which the residuary legatee is beneficiary," use of the word "contemplated" meant that the executor could use the proceeds, but was not required to, and thus there "was no clear and apt language in the will which appropriates exempt property to the payment of the testator's debts").

¶ 24 These holdings are consistent with the view of one of the leading commentators on insurance law:

[F]or the exemption of the statute to be deemed waived it is necessary that the insured include in his or her will a clear direction that the insurance should be used for the payment of his or her debts. The mere inclusion in the will of a provision directing the payment of debts is not deemed a sufficient manifestation of an intent that the proceeds of insurance should be used for the payment of creditors. Likewise, the inclusion in the husband's will of a provision directing payment of all his debts and the distribution of the residue to his wife does not deprive her of her right to the proceeds under the statutory exemption as against his creditors, where he did not specifically refer to the policy in his will.

5 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 66:48 (3d ed. updated Nov. 2011).

¶ 25 Only two courts have inferred a waiver of these types of statutory protections, but on facts that are distinguishable from this case. In *Burke v. Burke,* 14 Tenn.App. 381, 385 (1931), a Tennessee court determined that even though a testator did not mention the life insurance policy in directing the estate to pay debts, the testator must have meant for the life insurance proceeds to pay debts of the estate because the other assets in the will were household furniture and were valueless. In *Union Trust Co. v. Cox,* 108 Tenn. 316, 67 S.W. 814, 816 (1902), the testator directed that his debts be paid from the estate without mention of the life insurance policy and the insurance was the only asset in the estate. The court held that the last clause of the will (separated from the provision directing payment of the debts) directing the estate to be divided one-third, including all insurance, was adequate to waive the exemption.

¶ 26 Here, the Trust assets consisted of four parcels of real estate, shares of stock in two companies, bank accounts, a 401(k) account, and the life insurance policies, albeit the assets other than the insurance policy were worthless at the time of King's death. Neither the will nor the Trust specifically lists the insurance proceeds as a source in the directive to pay King's debts. Article IV of the will states:

My Personal Representative shall pay out of the residue of my estate my funeral expenses, the expenses of administering my estate wherever incurred, estate and inheritance taxes ... and other proper charges against my estate.... If, however, the cash and readily marketable assets in my residuary estate are insufficient to make the foregoing payments in full, the Personal Representative shall notify the Trustee of the trust ... of the amount of

the insufficiency and request payment thereof.

Article III of the Trust provides:

After payment from the Trustor's probate estate, the Trustee shall pay from the principal of the trust estate all remaining inheritance, estate or other death taxes ... that by reason of the Trustor's death are attributable to the trust estate and attributable to the Trustor's probate estate.... In addition, to the extent such items have not been paid out of the residue of Trustor's probate estate, the Trustee shall pay first from income and then principal the expenses of Trustor's funeral, including gravestone, burial, and last illness, *debts (except real estate mortgages)* and expenses of administration of the Trustor's estate. (Emphasis added.)

¶ 27 Similar to *Twinam, Waldrum,* and *Cooper* where the provision relating to the payment of debts from the estate's assets did not specifically mention the life insurance proceeds, here the Trust and will do not specifically mention the life insurance policies as a source of payment. Also, similar to those cases in which there were other assets in the estate from which debts could be paid without drawing from the life insurance proceeds, the Trust had many other assets, albeit worthless at King's death, from which to pay the debts of King's estate. That the other assets were essentially worthless at King's death is insufficient for us to infer that King intended to waive the protections of § 20–1131 and to preclude her minor son from the benefit of the life insurance proceeds. Just as the courts in the above cases found that the testator had not waived the statutory protections of the life insurance proceeds from payment of the debts because there was no clear, effective language waiving the statutory protections, here King's will

and the Trust do not specifically state that the debts should be paid from the life insurance proceeds. Therefore, the statutory protection of King's life insurance proceeds was not waived and King's creditors cannot reach the life insurance policies.[9]

¶ 28 Finally, DiFilippo argues that Reed, as the trustee, waived the protection of the statute by paying his attorneys' fees as personal representative of the estate from the Trust, presumably from the insurance proceeds. We disagree. The statutory protection is for King, not Reed as trustee, to have waived. Moreover, those fees were incurred after King's death to protect the estate and Trust. Thus, they were not debts of King, the person who purchased the insurance.

### III. Attorneys' fees

¶ 29 Reed has requested an award of attorneys fees pursuant to A.R.S. § 14–11004 (Supp.2011). Section 14–11004 provides:

A. A trustee ... is entitled to reimbursement from the trust for that person's reasonable fees, expenses and disbursement, including attorney fees and costs, that arise out of and that relate to the good faith defense or prosecution of a judicial ... proceeding involving the administration of the trust, regardless of whether the defense or prosecution is successful.

B. A court ... may order that a party's reasonable fees, expenses and disbursements pursuant to subsection A be paid by any other party or the trust that is the subject of the judicial proceeding.

Reed's appeal is a "good faith defense or prosecution" regarding the Trust.[10] We grant Reed's request for an award of reasonable attorneys' fees and costs on appeal from the Creditors, upon Reed's timely compliance

---

9. Reed argues that the terms of the Trust cannot waive the exemption because A.R.S. § 14–10105(B)(5) (Supp.2011) expressly precludes the Trust from overriding the exemption. Commentary from the Uniform Trust Code, on which the provision is based, states: "Subsection (b)(5) clarifies that a settlor may not restrict the rights of a beneficiary's creditors except to the extent a spendthrift restriction is allowed as provided in Article 5." Unif. Trust Code § 105 cmt. (amended 2005). The comment makes clear that the statute's purpose is to protect a beneficiary from the

beneficiary's creditors, not the creditors of the settlor; therefore, that provision does not apply here.

10. Section 14–11004 applies "to all judicial proceedings concerning trusts commenced on or after January 1, 2009." 2008 Ariz. Sess. Laws, ch. 247, § 18(A)(2) (2d Reg. Sess.). Reed filed this appeal in February 2010 and thus, § 14–11004 applies.

with Rule 21(a) of the Arizona Rules of Civil Appellate Procedure. We deny Creditors' requests for attorneys' fees and costs on appeal.

## CONCLUSION

¶ 30 We hold A.R.S. § 20–1131(A) protects life insurance proceeds paid to a trust and a third-party trust beneficiary from the reach of the trustor's creditors and that King did not waive that protection by generically directing debts be paid from the Trust. Accordingly, we reverse the judgment of the probate court and remand for further proceedings consistent with this decision.

CONCURRING: DANIEL A. BARKER,* and JON W. THOMPSON, Judges.