NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MIDFIRST BANK, a federally chartered savings association,
*Plaintiff (in CV2011-019600)/Appellant*

SMS FINANCIAL XX, LLC,
*Plaintiff (in CV2010-051104)/Appellant*

RICHARD C. GOODMAN, CELIA GOODMAN and THEODORE
WORTRICH,
*Plaintiff (in CV2009-018049)/Appellant*,

*v.*

DARON P. BARNESS, *Defendant/Appellee*.

No. 1 CA-CV-13-0287

FILED 11-18-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2011-019600
No. CV2010-051104
No. CV2009-018049

The Honorable James R. Morrow, Commissioner

**AFFIRMED**

---

COUNSEL

STINSON MORRISON HECKER LLP, Phoenix
By Craig A. Morgan, Sharon W. Ng
*Counsel for Plaintiff/Appellant MidFirst Bank*

LAW OFFICE OF BARBARA MARONEY, P.C.
By Barbara R. Maroney
*Counsel for Plaintiff/Appellant SMS Financial XX, LLC*

HOLCOMB LAW FIRM
By K. Alan Holcomb
*Counsel for Plaintiff/Appellant Goodman*

AIKEN SCHENK HAWKINS & RICCIARDI P.C., Phoenix
By Philip R. Rupprecht, Robert C. Van Voorhees
*Counsel for Defendant/Appellee*

———————————

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Michael J. Brown joined.

———————————

**T H O M P S O N,** Judge:

¶1        Appellants MidFirst Bank, SMS Financial XX, LLC, and Richard C. Goodman, Celia Goodman and Theodore Wortrich (collectively, creditors) appeal from the trial court's determination that they have no right to the life insurance funds paid out as a result of the death of Ron Barness. Specifically, the trial court dismissed the Writs of Garnishment as to both Northwestern Mutual Life Insurance and Shelea T. Ross as Trustee for the Ron Nathan Barness Irrevocable Trust (Trust), overruled the objections of the creditors, and found no violation of the Arizona Uniform Fraudulent Transfer Act by either Ron Barness or Shelea Ross. Creditors further object to the award of attorneys' fees to Daron Barness on the basis that the trial court erred in determining the merits. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

¶2          This appeal concerns Maricopa County Superior Court Actions numbered CV2011-019600, CV2010-051104 and CV2009-018049 (MidFirst). Each of those matters concern the default by Ron and Daron Barness to each of the creditors on one or more loans.

¶3          MidFirst asserts Ron and his wife Daron Barness defaulted on three commercial loans. MidFirst obtained a default judgment in CV2011-019600 in February 2012. The MidFirst judgment was in the amount of $7,428,308.58 plus attorneys' fees, costs, and interest at 15 percent. Ron Barness died in October of 2012 leaving a life insurance policy through Northwestern with the beneficiary being the Trust.

¶4          MidFirst then filed for, and received, a Writ of Garnishment against Northwestern whom it asserted was holding non-exempt funds in the form of life insurance proceeds. Certain of the Barnesses' other creditors were then allowed to consolidate their actions with CV2011-019600 for the purpose of litigating their own applications for garnishment.[1]     Both Northwestern and the Trustee responded to the Writs by denying they held funds belonging to judgment debtor Ron Barness. Creditors objected to Northwestern and the Trustee's answers and requested an expedited hearing.

¶5          A hearing was held. The trial court took evidence and heard argument.  The trial court found the following facts:

> Mr. Barness formerly owned a term life insurance policy issued by Northwestern numbered 14186483 ("Policy"). Mr. Barness applied to Northwestern for issuance of the Policy on April 11, 1997, and Daron P. Barness was identified as the beneficiary of the Policy. . . .

---

[1] The judgment in CV2009-018049, the Goodman matter, was a joint and several award against Ron and Daron Barness and Alex and Roxane Papakyriakou in the amount of approximately $6 million dollars plus interest and attorneys' fees and costs. The stipulated judgment in CV2010-051104, the SMS Financial matter, was likewise a joint and several award against the two couples, in the amount of $1,922,500 plus 18 percent interest per annum, and attorneys' fees and costs. The MidFirst judgment was against Ron and Daron Barness exclusively.

In 2011, Mr. Barness took steps to transfer ownership of the Policy to the Trust. In January 2011, Mr. Barness established the Trust. . . . The Trust Agreement identified Ms. Barness as the beneficiary of the Trust, and Shelea T. Ross, Ms. Barness' sister, as the trustee. On March 8, 2011, Mr. Barness signed a document designating the Trust as the owner of the Policy. Based on the evidence before the Court, Ms. Barness remained the beneficiary of the Policy throughout 2011 and well into 2012.

Mr. Barness gave money to Ms. Ross in order for the Trust to pay the premiums on the Policy. A premium of $2,104 was paid on April 21, 2011; and a premium of $2,241.22 was paid on April 16, 2012. In consideration for these premium payments, the Policy remained in effect, and, as of the dates of these payments, Ms. Barness remained the beneficiary of the Policy.

Mr. Barness answered Creditors' questions concerning the Trust and Policy during depositions that occurred after ownership of the Policy had been transferred to the Trust. In the deposition of November 4, 2011, Mr. Barness acknowledged that he had formed the Trust as part of an asset planning strategy in light of creditor claims. He testified that he had a term life insurance that had a present value of "zero." He acknowledged that he conveyed the Policy to the Trust so that his creditors could not get to the Policy "[w]hen if pays off.". . . At the time of the November 4, 2011, deposition, Mr. Barness apparently believed that the proceeds from the Policy would be paid to the Trust upon his death. During his deposition 7 months later on June 6, 2012, however, Mr. Barness testified that his "wife" is the beneficiary of the Policy.

Just weeks before Mr. Barness' death, the designation of Ms. Barness as the beneficiary of the Policy was revoked. On September 7, 2012, Ms. Ross, as trustee, signed a document revoking the prior beneficiary designation for death proceeds and identified the Trust as the designated beneficiary of the Policy. Mr. Barness died on October 3, 2012. On November 2, 2012, Ms. Ross, as trustee, signed a

beneficiary claim statement asking that the proceeds from the Policy be sent to her as trustee of the Trust, which is identified as the beneficiary of the Policy. (Internal citations omitted.)

The trial court concluded that the proceeds from the Policy were exempt from garnishment by Mr. Barness' creditors to satisfy either his debt or Mrs. Barness'. The trial court awarded attorneys' fees against the creditors. Creditors appealed.

## DISCUSSION

**¶6** Creditors assert on appeal, as they did below, that Ron Barness formed the Trust for the exclusive purpose of hindering, delaying, and defrauding his creditors in violation of Arizona's Uniform Fraudulent Transfer Act, Arizona Revised Statutes (A.R.S.) § 44-1004(A) (1) (2013),[2] and that, in so doing, creditors now have a right to funds from Ron Barness' term life insurance policy from Northwestern. Creditors also assert that rather than attempting to garnish proceeds of Ron's, they are attempting to garnish the life insurance proceeds to satisfy Daron's personal debts and, for these reasons, such proceeds are not protected under A.R.S. § 20-1131 (2010).

**¶7** We review the dismissal of a Writ of Garnishment for an abuse of discretion. *Old Republic Nat'l Title Ins. Co. v. New Falls Corp.*, 224 Ariz. 526, 528, ¶ 9, 233 P.3d 639, 641 (App. 2010). We defer to the trial court's factual findings unless they are clearly erroneous. *See Ahwatukee Custom Estates Mgmt. Ass'n Inc. v. Turner*, 196 Ariz. 631, 634, ¶ 5, 2 P.3d 1276, 1279 (App. 2000). A factual finding is clearly erroneous only where no substantial evidence supports it. *See Visco v. Universal Refuse Removal Co.*, 11 Ariz.App. 73, 75, 462 P.2d 90, 92 (1969).

---

[2] Arizona's Uniform Fraudulent Transfer Act, A.R.S. § 44–1004(A) reads:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:
> 1. With actual intent to hinder, delay or defraud any creditor of the debtor.

¶8           Statutory interpretation is a question of law that we review de novo. *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002). Where the statutory language is clear, we hold to the plain meaning of its terms. *Rineer v. Leonardo*, 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). "Our goal in interpreting statutes is to fulfill the intent and purpose of the legislature" and we do so by, first, looking to the plain language of the statute "as the most reliable indicator of its meaning." *Garden Lakes Cmty. Ass'n, Inc. v. Madigan*, 204 Ariz. 238, 241, ¶ 14, 62 P.3d 983, 986 (App. 2003); New *Sun Bus. Park, LLC v. Yuma Cnty.*, 221 Ariz. 43, 46, ¶ 12, 209 P.3d 179, 182 (App. 2009).

¶9           Section 20-1131(A), which outlines the exemption of life insurance proceeds from creditors, reads:

> If a policy of life insurance is effected by any person on the person's own life or on another life in favor of another person having an insurable interest in the policy, or made payable by assignment, change of beneficiary or other means to a third person, the lawful beneficiary or such third person, other than the person effecting the insurance or the person's legal representatives, is entitled to its proceeds against the creditors and representatives of the person effecting the insurance.

¶10           The trial court determined that the proceeds were exempt from creditors' claims as to either Ron or Daron Barness pursuant to A.R.S. § 20-1131(A) and *In re Estate of King*, 228 Ariz. 565, 269 P.3d 1189 (App. 2012) (addressing whether A.R.S. § 20–1131 protects life insurance proceeds from the insured's creditors when the proceeds are paid to a trust whose beneficiary is a third party). The trial court's ruling was based on its conclusion that: (1) neither the establishment of the Trust nor the transfer of the Policy to the Trust by Ron Barness were fraudulent transfers under A.R.S. § 44-1004, (2) the actions taken by Ron Barness in an effort to secure future funds for his wife were legal under A.R.S § 20-1131 and *King,* and (3) the change of the beneficiary from Daron Barness to the Trust could not be a fraudulent transfer under A.R.S. § 40-1004(A) because it was made by the trustee, not the debtor, as the plain language of the fraudulent transfer statutes requires. As the trial court pointed out:

> In 2011, Mr. Barness had no legal duty . . . to keep the Policy in place until he died for the benefit of his and/or his wife's creditors. He could have simply allowed the Policy to lapse . . . the beneficiary of the Policy had been changed to the Trust—a non-debtor—prior to the death of Mr. Barness.

¶11     Creditors dismiss *King* in three sentences in their reply brief, stating:

> Nor do *In re Estate of King* or *In re Jones Estate* [10 Ariz. App. 480, 482, 460 P.2d 16, 18 (App. 1969)] support Daron. Neither case concerns fraudulent transfers. *King* held that A.R.S. § 20-1131 applied as against decedent's creditors when insurance proceeds were filtered through a trust to the beneficiary, and that the decedent's position as trustee of that trust did not affect the proceeds' exempt status because she was never entitled to them.

¶12     We agree with the trial court that this matter is squarely within the holding of *In re Estate of King*. Here, as there, the decedent was "upside down" financially with an estate that was unable to satisfy the debts and had a term life insurance policy that paid into a trust and named the trust as the beneficiary of the policy. *Id.* at 567, ¶ 3, 269 P.3d at 1191.

¶13     The court in *King* explained that not only are "[l]ife insurance proceeds paid to a decedent's beneficiary [] exempt from claims of creditors of the decedent's estate pursuant to A.R.S. § 20–1131(A)" but "also protect[s] such proceeds when they are paid to a trust created by the insured in which the beneficiary is a third party." *Id.* at 568, ¶ 10, 269 P.3d at 1192, *citing May v. Ellis*, 208 Ariz. 229, 230-31, ¶¶ 1, 11, 92 P.3d 859, 860-61 (2004). The *King* court went on to say:

> We disagree with Creditors' argument that A.R.S. § 20–1131(A) does not protect the life insurance proceeds because King was the trustee of the Trust at the time she effected the policy, the Trust was the owner and beneficiary of the policy, and the policy was an asset of the Trust. As the Louisiana Court of Appeals aptly stated, an insured's creditors cannot reach life insurance proceeds on the life of the insured because the proceeds "do not come into existence during his life, never belong to him, and pass by virtue of the contractual agreement between the insured and the insurer to the named beneficiary." *T.L. James & Co. v. Montgomery*, 332 So.2d 834, 847 (La. 1976).
>
> The proceeds of the life insurance proceeds were never King's nor [subsequent Trustee] Reed's. Although King bought the life insurance policy and named the Trust as beneficiary when

she was the trustee, only her death triggered payment of the proceeds and a change in the trustee to Reed, her personal representative. However, Reed was not the beneficiary of the life insurance proceeds, the Trust was the beneficiary. Neither Reed nor King was the beneficiary of the Trust; the sole beneficiary was King's minor son. Although the policy may have been an asset of the Trust, that does not affect the applicability of § 20–1131(A). Therefore, neither King (who purchased the policy) nor her personal representative (Reed) was the beneficiary of the policy proceeds and § 20–1131(A) protects the policy proceeds.

*Id.* at 568-69, ¶¶ 14-15, 269 P.3d at 1192-93. In *King*, as here, the proceeds were never the decedent's, as they did not exist until the insured's death.[3] There as here, the Trust was the beneficiary of the Policy proceeds. When Ron Barness transferred the life insurance contract to the trust it had no legal effect on these creditors. Despite creditors' assertions to the contrary, they didn't suffer any actual harm by the transfer to the trust. For these reasons, we agree with the trial court that A.R.S. § 20-1131 protects these proceeds from creditors and that that conclusion is not altered by Ron Barness' testimony that he was attempting to provide for his wife after his death. The trial court is affirmed.

## Attorneys' Fees

**¶14**         Creditors next assert that the trial court erred in awarding Daron Barness her fees in the amount of $21,511 pursuant to A.R.S. §§ 12-341.01 and -1580(E) (attorneys' fees to prevailing party on garnishment). Creditors primary objection to the fees was that the trial court erred on the merits and, secondarily, that the fees requested in some instances were unreasonable. We review attorneys' fees awards under an abuse of discretion. *Jones v. Burk*, 164 Ariz. 595, 597-98, 795 P.2d 238, 240-41 (App. 1990). Finding no abuse of discretion in the award below to Daron Barness, we affirm.

On appeal, both creditors and Daron Barness seek their fees. Appellee Daron Barness having prevailed on appeal, is entitled to seek her

---

[3]   As to creditors' claims at oral argument that they could have seized the life insurance contract prior to Ron Barness' death, we are unpersuaded. *See ML Servicing Co., Inc. v. Coles*, ___ Ariz. ___, ___ P.3d ___ (App. 2014) (September 16, 2014).

reasonable attorneys' fees and costs in an amount to be determined after compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶15      For the above stated reasons, the trial court is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh